641 A.2d 913

**PACIFIC MORTGAGE AND INVESTMENT GROUP, LTD., et al.**

v.

**Annie F. HORN.**

**No. 737, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

June 1, 1994.

312

Michael P. Zell, Baltimore, for appellants.

Donna B. Bernstein, Baltimore, for appellee.

Argued before ALPERT, CATHELL and MURPHY, JJ.

CATHELL, Judge.

Appellants, Pacific Mortgage and Investment Group, Ltd. (Pacific) and Barclay National Mortgage Group (Barclay), appeal from an order of the Circuit Court for Baltimore City denying Barclay's motion to vacate a default judgment and Pacific's motion for summary judgment and granting appellee's, Annie F. Horn's, motion for summary judgment. Appellants raise the following questions:

1. Was this action barred by the existence of an open bankruptcy case, on a petition filed by Plaintiff, upon her subsequent pursuit of this action in her own behalf?

2. Was this loan a contract under seal, thus permitting the twelve year statute of limitations for a specialties to apply to this action?

3. Was this action otherwise barred by limitations as to any filing by the bankruptcy trustee or as to the three year limitation for actions on contract?

4. Was venue in this matter proper in Baltimore City?

5. Was the order of default properly issued against Barclay National Mortgage Group and should that order of default have been vacated?

6. Was this loan within the scope of Maryland's Small Loan Law or was it exclusively governed by statutory provisions for first mortgage loans, which allow any rate of interest?

7. Was Plaintiff properly granted summary judgment?

8. Were damages properly assessed against Appellants?

## FACTS

Appellee and her now deceased husband entered into a mortgage loan with Pacific on August 27, 1986. The word "seal" was printed next to each of the Horns' signatures. The $6,000 loan was secured by a first mortgage lien on the Horns' house. Pacific charged a $750 discount fee and $536 for an appraisal, credit report, title search and recording fees. The loan was to be paid off in fifteen years with 180 equal monthly

payments. At some later point, Pacific assigned the loan to Barclay.

Several months after executing the loan, appellee's husband died. Shortly thereafter appellee defaulted on the loan. Pacific then began foreclosure proceedings. In response to this, appellee filed Chapter 13 bankruptcy petition. In 1991, while her bankruptcy case was still open, appellee filed suit against Pacific and Barclay in the Circuit Court for Baltimore City. Appellee listed the lawsuit as an asset in her bankruptcy schedules. The bankruptcy case was closed on November 22, 1991. Appellee has paid all the other creditors in full.

Appellee failed to serve Barclay with her first complaint but did serve Pacific. Pacific filed a motion to dismiss for lack of subject matter jurisdiction and improper venue, claiming venue was proper only in Baltimore County. Pacific's motion to dismiss was denied. Appellee then amended her complaint two times. Pacific, after filing another motion to dismiss, which the court again denied, filed its first answer in this action to the second amended complaint and raised several affirmative defenses, including limitations, laches, and waiver.

On September 22, 1992, appellee filed a third amended complaint. Appellee served Barclay for the first time with this third amended complaint. Both Pacific and Barclay joined in a motion to dismiss for lack of subject matter jurisdiction and for improper venue. Barclay also filed a motion to dismiss for failure to state a claim against it.

Appellee filed a notice of deposition, to take appellants' depositions on December 1, 1992. Appellee's attorney spoke with appellants' attorney the day before the scheduled depositions and appellants' attorney stated that appellants refused to be deposed until their motions to dismiss were heard. On December 11, 1992, a hearing on the motions to dismiss was held. On December 15, 1992, appellee filed a motion for sanctions requesting a default judgment against both Barclay and Pacific for failure to comply with discovery. On December 16, 1992, the motion to dismiss for lack of subject matter jurisdiction and for improper venue was denied, but Barclay's

motion to dismiss for failure to state a claim was granted subject to appellee amending her complaint by December 21, 1992. On December 17, 1992, appellee deposed a representative of Pacific. On December 21, 1992, appellee filed her fourth amended complaint. Barclay answered this complaint on January 6, 1993. On January 11, 1993, the court granted appellee's motion for sanctions and issued an order of default against Barclay. Barclay filed a motion to vacate the order of default. On March 3, 1993, the court held a hearing on the motion to vacate and denied it. As of March 3, 1993, a representative of Barclay had yet to attend a deposition, Barclay had yet to agree to send a representative to be deposed, and Barclay had not sought a protective order.

In the meantime, appellee and appellants had filed motions for summary judgment. These motions were also heard on March 3, 1993, along with the motion to vacate the order of default. After the court denied Barclay's motion to vacate, the parties agreed that if Barclay was currently holding the note there was no need to address the motions for summary judgment. The only issue that would need to be addressed was the amount of damages for which Barclay was liable. Barclay and Pacific were represented by the same attorney, and the court asked the attorney whether Barclay or Pacific held the note. The attorney indicated the note was traded back and forth between the parties and he was not sure which party was then holding the note.

Because appellants would not state whether Barclay was holding the note the court heard appellee's motion for summary judgment against Pacific and Pacific's motion for summary judgment against appellee. Because of the order of default against Barclay, the court refused to hear its motion for summary judgment. Undaunted by the order of default against Barclay and the court's frequent admonishments that Barclay's liability had been determined, appellants' attorney also presented Barclay's motion for summary judgment. The court granted appellee's motion for summary judgment, holding that appellants had violated Md.Code (1990 Repl.Vol.) § 12–108 of the Commercial Law Article by charging points;

the terms of the loan were governed by the Maryland Consumer Loan Law (MCLL) in Title 12, Subtitle 3 of the Commercial Law Article; appellants had violated §§ 12–306(d) and 12–313(a)(1) of the MCLL by charging points; appellants had violated §§ 12–306(e)(3) and 12–313(a)(1) of the MCLL by extending the loan over 180 months where the statutory maximum length permitted for the loan was 72 months and 15 days; appellee had standing to bring the suit because the bankruptcy trustee abandoned the case; the loan was a document under seal so the 12 year statute of limitations applied to the case; and appellants acted willfully in violating the MCLL.

## LEGAL ANALYSIS

### 1.

 Appellants contend appellee did not have standing to bring this suit because the suit was filed when appellee's bankruptcy was open. While the bankruptcy was open, the estate was the owner of the suit. 11 U.S.C. § 541(a)(1) provides that, an "estate is comprised of . . . all legal or equitable interests of the debtor in property. . . ." The bankruptcy trustee is the proper party to bring an action for injury to a person's property while a bankruptcy case is open; the debtor does not have standing to bring a claim. *Hancock Bank v. Jefferson*, 73 B.R. 183, 185 (S.D.Miss.1986); *In re Snyder*, 61 B.R. 268, 270 (Bankr.S.D.Ohio 1986); *Rounds v. Community National Bank*, 454 F.Supp. 883, 889 (S.D.Ill. 1978); *Moore v. Slonim*, 426 F.Supp. 524, 526 (D.Conn), *aff'd* 562 F.2d 38 (2d Cir.1977).

 Appellee contends, however, that the bankruptcy trustee abandoned this suit when the bankruptcy case closed, subsequent to the filing of this suit. 11 U.S.C. § 554, **"Abandonment of property of the estate,"** provides in part:

(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any

property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate. (c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor. . . .

"Abandonment requires either a court order after a notice and a hearing or a failure to administer scheduled assets *and* a closing of the case." *Behrens v. Woodhäven Ass'n,* 87 B.R. 971, 973 n. 1 (Bankr.N.D.Ill.1988) (citations omitted).

■ Appellants cite *In re Schmid,* 54 B.R. 78 (Bankr.D.Or. 1985) and argue that in order for there to be an abandonment of property the bankruptcy trustee must exhibit some outward manifestation of his or her intent to abandon. We disagree. The *Schmid* court stated, "For property to be abandoned, the court has to make a formal determination of abandonment, or, at the least, the property deemed abandoned has to be so explicitly identified in the schedules as to be able to impute an intent to abandon." *Id.* at 80. In *Schmid,* the court found that the debtor's description in the schedules of his cause of action was ambiguous and that he failed to "properly 'schedule' the asset." *Id.* at 79. Upon review of appellee's description and listing of this case in her bankruptcy schedule, we find that it was properly scheduled. Indeed, appellants do not argue to the contrary. When property is "scheduled as an asset of the estate for the benefit of creditors,"

the trustee, creditors and representatives of the estate [are] put on notice of its existence and the fact it [is] a claim in favor of the estate. "[W]here the trustee has knowledge that is sufficient to put him upon diligent inquiry as to the subject asset, the abandonment is held to have been knowingly made and hence is irrevocable."

*Starrett v. Starrett,* 225 N.J.Super. 150, 541 A.2d 1119, 1123 (A.D.1988) (citation omitted).

Also, it is of no small significance that appellee paid her creditors in full. The trustee has a duty to protect the creditors. Since the creditors were paid in full, there would

be no purpose for the trustee to assert and maintain control over this suit. We thus hold that the bankruptcy trustee did abandon this suit when the bankruptcy case was closed.

We next address whether appellee may still maintain the suit despite the fact that, initially, she was not the proper party to bring the suit. This issue was addressed in *Barletta v. Tedeschi*, 121 B.R. 669 (N.D.N.Y.1990). That court stated that it did

> not agree that plaintiff's premature filing of his complaint is a bar to his continuation of his action now. When the trustee abandons estate property, " 'the property stands as if no bankruptcy had been filed and the debtor enjoys the same claim to it as he held previous to the filing of the bankruptcy.' " . . .
>
> . . . .
>
> The question remains whether this reversion of title permits the plaintiff here to maintain his action when he did not have standing to sue at the time he filed his complaint. . . . The court believes that it does.

*Id.* at 673–74. Therefore, we hold that appellee has standing to bring this suit.

### 2. & 3.

■ Appellants contend that the note executed by Pacific and the Horns was not under seal and that a three-year statute of limitations applies. We disagree. Md.Code (1989 Repl.Vol.) § 5–102(a)(5) of the Courts and Judicial Proceedings Article provides that the statute of limitations for contracts under seal is twelve years. The crux of appellants' argument is that the word "seal" was placed on a pre-printed form by Pacific, that Pacific produced uncontradicted evidence showing that *it* did not intend the loan agreement to be under seal and that appellee has produced no evidence showing that she intended that the loan agreement be under seal.[1]

---

1. No other limitation issues were asserted.

The Court of Appeals in *Warfield v. Baltimore Gas & Electric Co.*, 307 Md. 142, 143, 512 A.2d 1044 (1986) stated:

We shall hold in this case that the inclusion of the word "seal" in a pre-printed form executed by an individual is sufficient to make the instrument one under seal.

The Court noted that the fact that one party placed the word "seal" on the instrument did not make it any less the seal of the other party whose signature appeared next to the word "seal." *Id.* The Court did indicate that if there was evidence indicating that the party placing his or her signature next to a seal did not intend for the instrument to be under seal, then the instrument would not be under seal. *Id.* at 145, 512 A.2d 1044. Appellants would have us require appellee to produce evidence that by placing her signature next to the seal she *intended* the loan agreement to be under seal. That is not the law in Maryland. Since there is no evidence indicating appellee did not intend that the instrument be under seal, we hold that the twelve year statute of limitations applies and that this case was timely filed.

### 4.

■ Appellants contend that the circuit court erred in failing to dismiss the claim for improper venue. They claim that the only proper forum in which they may be sued is Baltimore County. We disagree.

■ Md.Code (1989 Repl.Vol.) § 6–201(a) of the Courts & Judicial Proceedings Article provides that "a civil action shall be brought in a county where the defendant resides, carries on a regular business, is employed, or habitually engages in a vocation." Appellee argued that appellants carried on a regular business in Baltimore City. "Under Maryland law, improper venue is a defense with the duty of averment and the burden of proof falling on the defendant." *Odenton Development Co. v. Lamy*, 320 Md. 33, 39, 575 A.2d 1235 (1990). To meet the burden of proving improper venue, the defendant must do more than merely raise "a bare allegation that venue was improper, unsupported by affidavit or

evidence." *Id.* The defense of improper venue is a mandatory defense and must be raised by a motion to dismiss before the answer is filed. Md.Rule 2–322(a). If the defense is not raised before the answer is filed, it is waived. *Id.*

Pacific moved to dismiss for improper venue after appellee's first complaint and second amended complaint. (Barclay was not served with either of these complaints.) Neither of these motions to dismiss were supported by an affidavit or other evidence. The court denied both motions, and Pacific did not file a motion to reconsider. Appellee filed a third amended complaint. The third amended complaint raises the same claims as, and is virtually identical to, the first complaint.[2] In response to appellee's third amended complaint (Barclay was served for the first time with this complaint), Pacific and Barclay joined in a motion to dismiss for improper venue.

Pacific, however, was precluded from raising the venue issue again. A party must raise the defense of improper venue before he or she files an answer. Md.Rule 2–322(a). Pacific had already filed an answer to appellee's second amended complaint after its motion to dismiss for improper venue was denied. It makes no difference that appellee filed amended complaints. Appellee's amended complaints relate back to her original complaint because all the complaints stated the same cause of action. *Crowe v. Houseworth*, 272 Md. 481, 485–86, 325 A.2d 592 (1974). Also, Pacific was not required to file a new answer to appellee's amended complaints. Md.Rule 2–341(a). Once Pacific filed its initial answer, it was precluded from raising the defense of improper venue in response to amended complaints that did not raise any new claims.

The motion to dismiss, filed in response to appellee's third amended complaint, did include an affidavit from Pacific claiming that it resided and had its only place of business in Baltimore County and that it did not carry on a regular business in Baltimore City. At this point, however, the court

---

**2.** It appears that the complaint was amended for the sole purpose of serving Barclay.

had already determined that Baltimore City was a proper forum with respect to Pacific. Barclay did not include an affidavit or any other evidence proving venue was improper in Baltimore City. Thus, Barclay failed to meet its burden to prove venue was improper in Baltimore City.

In addition, appellee produced evidence that venue was proper in Baltimore City. Venue is proper in a county where the defendant "carries on a regular business." Md. Code (1989 Repl.Vol.) § 6–201(a) of the Courts & Judicial Proceedings Article. It is not necessary for a defendant to maintain an office or have his or her principal place of business in a certain county in order for the defendant to carry on a regular business in that county. *Dodge Park, Inc. v. Welsh,* 237 Md. 570, 572–73, 207 A.2d 503 (1965). Appellee submitted an affidavit from the president of Barclay, Morris Helman, in which he admitted that Barclay held the mortgages on 18 separate parcels of property in Baltimore City. Mr. Helman also stated in this affidavit that Barclay bought all of those mortgages from Pacific. Appellants' attorney stated it was a normal business practice for Barclay to buy mortgages from Pacific. A Maryland resident that regularly provides credit to Baltimore City residents, places mortgage liens on property in Baltimore City, and buys and sells these mortgage liens has done more than merely transacted business in Baltimore City but has, in fact, carried on a regular business in Baltimore City. Venue in this case is proper in Baltimore City.

## 5.

Barclay contends the circuit court erred by not vacating the order of default because it was not a party to the action until appellee filed her fourth amended complaint. We disagree. Md.Rule 2–433(a) provides that if a party files a motion under Rule 2–432(a) and the court finds a failure of discovery, the court may enter a judgment by default. Md. Rule 2–432(a) provides:

A discovering party may move for sanctions ... if a party ... fails to appear ... [for a] deposition.... Any such failure may not be excused on the ground that the discovery sought is objectionable unless a protective order has been obtained under Rule 2-403.

Md.Rule 2-403(a) provides:

On motion of a party or of a person from whom discovery is sought, and for good cause shown, the court may enter any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that the discovery not be had ... until ... some ... event or proceeding has occurred....

"The filing of a motion to dismiss does not automatically stay or extend the time for providing discovery.... In the usual case ... discovery proceeds during the pendency of a motion to dismiss." P. Niemeyer & L. Richards, *Maryland Rules Commentary*, 57–58 (1984, 1988 Supp.)

Appellee attempted to depose a representative of Barclay on December 1, 1992. Barclay refused to send a representative to appear for the deposition and failed to file for a protective order. Appellee filed a motion for sanctions pursuant to Md.Rule 2-432(a) on December 15, 1992. It was not until December 16, 1992, that the lower court granted Barclay's motion to dismiss for failure to state a claim. The court stated in its order that Barclay's motion to dismiss was granted "unless Plaintiff shall amend her Complaint within ten (10) days of December 11, 1992, setting forth additional factual support for her claims against Barclay National Mortgage Group." Thus, the order was a qualified order contingent upon appellee filing an amended complaint by December 21, 1992.

The order was not a final judgment dismissing Barclay from the suit. Md.Rule 2-322(c) provides that, "If leave to amend is granted and the plaintiff fails to file an amended complaint within the time prescribed, the court, on motion, may enter an order dismissing the action." P. Niemeyer & L. Richards,

*Maryland Rules Commentary,* 40 (1984, 1988 Supp.) states that, "If an amended complaint is not filed within the time allowed by the court or by the rule, an additional order must be entered dismissing the action, and that order operates as a judgment." If a court dismisses a complaint but affords a plaintiff leave to amend, the order dismissing the complaint is not a final order. *Makovi v. Sherwin–Williams Co.,* 311 Md. 278, 281, 533 A.2d 1303 (1987).

There is no merit to Barclay's claim that it did not have to comply with discovery because it was not a party to the action. Appellee filed a notice requesting that a representative of Barclay appear for a deposition and appellee filed a motion for sanctions before Barclay's motion to dismiss was granted, with a qualified order. The order was not a final judgment. Barclay never filed a motion requesting a protective order. In fact, Barclay never offered to reschedule its deposition, never filed for a protective order and never filed a response to appellee's motion for sanctions. The circuit court did not err by denying Barclay's motion to vacate the order of default.

### 6. & 7.

Pacific contends that its lending activities are governed by Md.Code (1990 Repl.Vol.) § 12–103(b) of the Commercial Law Article, *"Loans secured by residential real property; licensing requirements."* Section 12–103(b) provides:

(1) A lender may charge interest at any effective rate of simple interest on the unpaid principal balance of a loan if:

(i) There is a written agreement signed by the borrower which sets forth the stated rate of interest charged by the lender;

(ii) The loan is secured by a first mortgage or first deed of trust on any interest in residential real property;

(iii) There is no prepayment penalty in connection with the loan;

(iv) The loan is made and the mortgage or deed of trust is executed after the effective date of this section;

(v) The loan is not a refinancing of a loan secured by a first mortgage or first deed of trust on any interest in residential real property ...; and

(vi) The lender does not require payment of any interest in advance except any points permitted under this subtitle.

Appellee contends that Pacific failed to meet the requirements of 12–103(b)(1)(vi). Specifically, appellee contends that Pacific charged points in violation of Md.Code (1990 Repl.Vol.) § 12–108 of the Commercial Law Article. Section 12–108 provides in part:

(a) Except for a loan described in § 12–103(d) or (e) of this subtitle, a lender may not charge a borrower or any other person any point or fraction of a point.

Pacific claimed it was exempt from § 12–108 because the loan in question met the requirements of § 12–103(d). Specifically, Pacific argued:

[A]s stated there [§ 12–108], your honor, at the top except for a loan described in 12–103D [sic], a lender may not charge a borrower any other provisions or any point or fraction of a point, and I believe we come under the 12–103 exception that would take that out of there. So that we're not—that we are allowed to charge any points *because we have been deregulated.* [Emphasis added.]

Pacific did not argue that any other exception under § 12–108 applied to it.

Section 12–103(d) provides:

A lender may charge interest at any rate not in excess of that permitted by federal law if the loan is:

(1) Secured by a mortgage or deed of trust;

(2) Insured or guaranteed in full or in part by the Federal Housing Administration ... or any other federal agency or instrumentality; and

(3) Made in full compliance with applicable federal law.

As evident from Pacific's argument at the hearing, Pacific thought the fact that it had been "deregulated" fulfilled the requirements of § 12–103(d). To meet the requirements of

§ 12–103(d), Pacific had to show that the loan was insured or guaranteed by a federal agency or instrumentality. Pacific never alleged that this was the case. The fact that the mortgage industry has been deregulated has no bearing on whether the loan was insured or guaranteed by the federal government.

■ Pacific also argues that the § 12–103(b)(1)(vi) requirement, that "[t]he lender does not require payment of any interest in advance except any points permitted under this subtitle," has been preempted by § 501 of the federal Depository Institutions Deregulation and Monetary Control Act of 1980 (DIDMCA), 12 U.S.C. § 1735f–7 note, as to all first mortgage loans. This overstates the extent to which the DIDMCA preempts state law. The Attorney General issued an opinion on the extent to which the DIDMCA preempts § 12–103(b)(1)(vi) in 73 Op.Att'y Gen. 144 (1988). The Attorney General stated:

> [I]t is our opinion that CL § 12–103(b)(1)(vi) is a limitation on the amount of interest that a lender may receive for a loan secured by a first mortgage on residential property. As such, it is preempted by DIDMCA § 501(a)(1). Accordingly, lenders who make loans secured by first mortgages on residential property may not be prohibited from collecting interest in advance at the time of loan closing.

*Id.* at 151. At first glance, this appears to support Pacific's contention.

Earlier in the opinion, however, the Attorney General stated:

> DIDMCA § 501(a)(1) applies to all "federally related mortgaged loans," as described in 12 U.S.C. § 1735f–5 and as that description is expanded by DIDMCA § 501(a)(1)(C). Thus, the preemption applies to any loan that is:
>
> (1) Secured by residential real property, stock in a residential cooperative housing corporation, or a first lien on a manufactured home; and
>
> (2) Made by a lender insured or regulated by an agency of the federal government, approved by the Secretary of

Housing and Urban Development for participation in a mortgage insurance program under the National Housing Act, or who is an individual financing the sale or exchange of the ... individual's principal residence; or

(3) Made, insured, guaranteed, supplemented, or assisted in any way by an officer or agency of the federal government or under or in connection with a housing, urban development, or related program administered by a federal officer or agency; or

(4) Eligible for purchase by the Federal National Mortgage Association, the Government National Mortgage Association, or the Federal Home Loan Mortgage Corporation or is from a financial institution from which it could be purchased by the Federal Home Loan Mortgage Corporation; or

(5) Made by a creditor who makes or invests in residential loans including loans or credit sales secured by first liens on manufactured homes, aggregating more than $1,000,000 per year; or

(6) Made by any creditor who sells manufactured homes financed by loans or credit sales, if the creditor has an arrangement to sell or does sell the loans or credit sales to another lender, institution, or creditor that does not make or invest in residential real estate loans or loans or credit sales secured by first liens on manufactured homes aggregating more than $1,000,000 per year.

*Id.* at 146 n. 5. Thus, the Attorney General was not stating that § 12–103(b)(1)(vi) was preempted as to all first mortgages. Rather, the Attorney General was stating that the subsection was preempted only as to those loans to which the DIDMCA applies, *i.e.,* "federally related mortgage loans."

The creditor, in this case Pacific, has the burden of showing that DIDMCA applies to it. *In re Russell,* 72 B.R. 855, 867 (Bankr.E.D.Pa.1987). The *Russell* court stated:

[O]nly loans which the lender can prove fit within all of the requirements of the DIDMCA are in fact exempt from the confines of state-law interest rates. These requirements

include a showing that a loan ... is a "federally related mortgage loan." ...

... [I]n order to invoke the DIDMCA, the [lender] must meet the burden of establishing that it is within the definitions of these terms.

*Id.* *See also Overton Construction, Inc. v. First State Bank, Springdale,* 281 Ark. 69, 662 S.W.2d 470, 471 (1983); *First American Bank and Trust v. Windjammer Time Sharing Resort, Inc.,* 483 So.2d 732, 737 (Fla.App. 4 Dist.), *cert. denied,* 494 So.2d 1150 (1986); and *Mitchell v. Trustees of United States Mutual Real Estate Investment Trust,* 144 Mich.App. 302, 375 N.W.2d 424, 432 (1985). Other than its claim that it had been deregulated, Pacific offered no proof that the loan was a "federally related mortgage loan."

In its reply brief Pacific states, "there is nothing in evidence to state that Pacific did not meet one of the requirements of the [DIDMCA]...." Neither, however, was there anything in evidence to state that Pacific did meet the requirements of the DIDMCA and it is Pacific's burden to show that the DIDMCA applies.

■ We shall next address whether the lower court correctly determined, on the motions for summary judgment, that the MCLL governs this loan. Pacific first contends that any loan governed by § 12–103(b) cannot simultaneously be governed by the MCLL. Since Pacific has failed to show that the loan in this case is governed by § 12–103(b), we shall not address this issue. Next, Pacific contends that the MCLL does not apply to any loans secured by a first mortgage. We disagree. It is possible for the MCLL to govern a loan secured by a first mortgage if the loan meets the requirements of the MCLL.

■ In its brief, Pacific argues that the MCLL did not apply to this loan because it was not a licensee under the MCLL. During the hearing, however, Pacific claimed that it was a licensee under § 12–314(b)(3) of the Commercial Law Article. Section 12–314(b) provides:

(b) *Loans unenforceable; exceptions.*—(1) A loan made in the amount of $6,000 or less, *whether or not the loan is or purports to be made under this subtitle,* is unenforceable if a rate of interest, charge, discount, or other consideration greater than that authorized by the laws of this State is contracted for by any person unless the excess rate contracted for is the result of a clerical error or mistake and the person corrects the error or mistake before any payment is received under the loan.

(2) The person who is neither a licensee nor exempt from licensing may not receive or retain any principal, interest, or other compensation with respect to any loan that is unenforceable under this subsection.

(3) *This subsection does not apply to a person who is a licensee or who is exempt from licensing under this subtitle.* [Emphasis added.]

If Pacific was a licensee under § 12–314(b)(3), then Pacific would be licensed under the MCLL. Pacific's admission that it was a licensee under § 12–314(b)(3) might have been an attempt to escape the provisions of § 12–314(b)(2). For whatever reason Pacific claimed it was a licensee at the hearing, its admission that it was a licensee precludes it from claiming on appeal that the lower court erred when the court found it was a licensee.

Pacific has not met its burden of showing that the applicable state law has been preempted by federal law as to its loan to appellee. Further, Pacific cannot now argue that the MCLL does not apply to its loan to appellees. The trial court applied the correct law and properly granted summary judgment for appellee.

### 8.

 Appellants contend that the court improperly found their actions were willful. Barclay argues its actions were not willful because it was merely the assignee of the mortgage. We disagree. Md.Rule 2–433(a)(3) permits a court to enter "a judgment by default that includes a determination as to liability and all relief sought by the moving party against the

failing party." A judgment by default constitutes an admission by the defaulting party of its liability for the causes of action set out in the complaint. *Gotham Hotels v. Owl Club,* 26 Md.App. 158, 173, 337 A.2d 117 (1975). Barclay's claim that, as an assignee, its actions with respect to the loan can not be willful goes to the issue of its liability and can not be raised on appeal.

As to whether Pacific's actions were willful, Md.Code (1990 Repl.Vol.) § 12–313 of the Commercial Law Article provides that:

> If any amount in excess of the charges permitted by this subtitle is ... contracted for, charged, or received by a licensee ... and (1) if the excess charge was made willfully for the benefit of the lender, then the lender may not receive or retain any interest or compensation with respect to the loan.

In *Allnutt v. State,* 59 Md.App. 694, 699, 478 A.2d 321 (1984), we approved the following jury instruction:

> Willfulness may be established through proof, that Mr. Allnutt's failure ... constituted a voluntary intentional violation of a known legal duty. In other words, the State must prove that Mr. Allnutt must have known clearly and without a doubt, that he had a legal duty which was clearly stated to him....

Pacific's contention that its action were not willful is essentially based on its assertion that it did not realize the loan was governed by the MCLL and thus it could not have violated a known legal duty. The instruction we approved in *Allnutt,* however, defined willfulness in a criminal context. There is a distinction between when an act is willful in a civil action and when the act is willful in a criminal action.

> In a civil action, the word [willfully] often denotes an act which is intentional, or knowing, or voluntary, as distinguished from accidental. But when used in a criminal context it generally means an act done with a bad purpose; without justifiable excuse; stubbornly, obstinately, perversely. The word is also employed to characterize a thing

done without ground for believing it is lawful or conduct marked by a careless disregard whether or not one has the right so to act.

*Black's Law Dictionary* 1600 (6th ed. 1990).

Pacific does not dispute the fact that it intentionally, knowingly and voluntarily charged points on this loan; it admits it and argues it was proper. We earlier held that state law was not preempted as to this loan. Therefore, by charging points on the loan, Pacific violated § 12–306(d), which provides that a lender "may not contract for, charge, or receive interest in advance. . . ." Pacific did not accidentally charge points on this loan; it intentionally, knowingly, and voluntarily charged points. Thus, Pacific acted willfully. The court did not err in granting appellee's motion for summary judgment.

JUDGMENTS AFFIRMED; COSTS TO BE PAID ONE–HALF BY BARCLAY AND ONE–HALF BY PACIFIC.