837 A.2d 229

L. Chris LAMPROS,

v.

GELB & GELB, P.C.

No. 1997, Sept. Term, 2002.

Court of Special Appeals of Maryland.

Dec. 3, 2003.

448

Stephan Y. Brennan (Charles E. Iliff & Meredith, P.C., on the brief), Pasadena, for appellant.

Albert D. Brault, James M. Brault (Brault, Graham, Scott & Brault, LLC, on the brief), Rockville, for appellee.

Argued before HOLLANDER, SONNER, and ADKINS, JJ.

ADKINS, Judge.

L. Chris Lampros, appellant, was sued in a circuit court outside his county of residence in an action for declaratory relief. He contends that the Circuit Court for Montgomery County lacked jurisdiction to hear the dispute due to improper venue and asks that we vacate the declaratory judgment entered against him. We agree, and so order.

## FACTS AND LEGAL PROCEEDINGS

Lampros shared a law office in the District of Columbia for 35 years with, first, Joseph Gelb, and then, Gelb & Gelb ("Gelb"), appellee. This arrangement continued until August 31, 2000, when Lampros ostensibly retired from the practice of law. Both Lampros and Roger Gelb, Joseph's son, are licensed to practice law in the District of Columbia. Neither lawyer is licensed in Maryland. Lampros is a resident of Anne Arundel County, Maryland. Gelb is a corporation located in, and organized under, the laws of the District of Columbia.

On September 1, 2000, Lampros was contacted by Howard Schultz, the grandfather of Marshall Lewis, a minor who had been killed in an automobile accident. The accident occurred on August 18, 2000, in Montgomery County, Maryland. The Lewis family resides in Montgomery County. Lampros referred the case to Gelb. On September 5, 2000, Marshall Lewis' parents, Robert and Linda Lewis, retained Gelb to represent them on a contingent fee basis regarding their wrongful death claim. The parties contest the degree to which Lampros remained involved in the case.

Liability was not contested in the wrongful death claim and litigation was avoided. Gelb's services for the Lewis family primarily involved identification of the amount of insurance coverage and negotiation of the settlement amount, which was somewhat complicated by the existence of three other claimants.

In May 2001, a settlement was reached in which the Lewises were paid $852,589.58. When Lampros learned of the settlement, he demanded $142,098.00, which represented one-half of the contingency fee. Gelb placed the disputed $142,098.00 in its trust account and filed an action for declaratory judgment in the Circuit Court for Montgomery County.

Lampros filed a Motion to Dismiss or Transfer Action for Improper Venue. Judge Thompson denied the motion. Gelb then filed a Motion for Summary Judgment. While that motion was pending, Lampros filed an answer and counterclaim asserting three counts: breach of contract, fraud/nondisclosure of material facts, and declaratory judgment.

On May 15, 2002, Judge Woodward granted Gelb's Motion for Summary Judgment. Gelb then filed a Motion to Dismiss Counterclaim and/or for Summary Judgment on the Counterclaim. While Gelb's Motion to Dismiss or for Summary Judgment on the Counterclaim was pending, Lampros filed three new motions: a motion to stay the operation of the May 15 order, a renewed motion to dismiss for improper venue, and a motion to vacate the May 15 order.

Judge Thompson granted Gelb's motion to dismiss the counterclaim and denied Lampros' motion to vacate; Judge Woodward denied Lampros' motion to stay and his renewed motion to dismiss for improper venue. Lampros filed a timely appeal to this Court.

## DISCUSSION

### I.

### Improper Venue

Lampros argues that venue for this action was improper in the Circuit Court for Montgomery County. We agree.

■■ With limited exception, a defendant has the right not to be sued except in the county of his residence. *See Eastham v. Young*, 250 Md. 516, 518, 243 A.2d 559 (1968). "The right to have a case heard in the court of proper venue is a personal privilege[.]" *Howell v. Bethlehem–Sparrows Point Shipyard, Inc.*, 190 Md. 704, 711, 59 A.2d 680 (1948). "The privilege of a defendant to be sued only in the county of his residence is a substantial right not to be denied except in strict compliance with the exceptions established by law." *Capron v. Mandel*, 250 Md. 255, 260, 241 A.2d 892 (1968). In *Allender v. Ghingher*, 170 Md. 156, 183 A. 610 (1936), the Court of Appeals explained:

And even though equity could be considered the proper forum, it does not follow that appellants are compelled to defend the suits beyond the county of their residence, thus depriving them of the right of trial at home where they live and are known, which in turn makes the proceedings more costly to them.... "The privilege conferred on a defendant of being sued in the county of his domicile is a valuable and substantial right which is not to be denied upon a strained or doubtful construction of a statutory exception or except in strict compliance with the law on clear and convincing proof, and all doubts are to be resolved in its favor."

*Id.* at 165–66, 183 A. 610 (citations omitted).

The legislature has provided statutory direction governing proper venue for disputes brought before Maryland courts.

The general rule for venue is set forth in Md.Code (1974, 2002 Repl.Vol.) section 6–201 of the Courts & Judicial Proceedings Article ("CJ"), which states, in pertinent part

(a) *Civil Actions.*—Subject to the provisions of §§ 6–202 and 6–203 and unless otherwise provided by law, a civil action shall be brought in a county where the defendant resides, carries on a regular business, is employed, or habitually engages in a vocation. In addition, a corporation also may be sued where it maintains its principal offices in the State.

CJ sections 6–202 and 6–203 create exceptions to the general rule stated in section 6–201, none of which apply here. The rules as to the place where a defendant may be sued are applicable in equity as well as at law. *See Eastham,* 250 Md. at 518, 243 A.2d 559.

■■■■ The defendant bears the burden of proving that venue is improper. *See Odenton Dev. Co. v. Lamy,* 320 Md. 33, 39, 575 A.2d 1235 (1990). "To meet the burden of proving improper venue, the defendant must do more than merely raise a 'bare allegation that venue was improper, unsupported by affidavit or evidence.'" *Pacific Mortgage & Inv. Group, Ltd. v. Horn,* 100 Md.App. 311, 322–23, 641 A.2d 913 (1994) (citation omitted).

Lampros' Motion to Dismiss for Improper Venue was supported by affidavit. Lampros averred that he resides in Anne Arundel County and has resided there since 1979; he is not a resident of Montgomery County; and has "never been employed, conducted regular business or habitual avocation in Montgomery County as a continuous pursuit of some calling or profession." Lampros contends, therefore, that proper venue for this action for declaratory judgment is in his county of residence, Anne Arundel County.

■■■■ Improper venue is a mandatory defense that must be raised by preliminary motion or it is waived. *See Pacific Mortgage,* 100 Md.App. at 323, 641 A.2d 913; *see also* Md. Rule 2–322(a)("The following defenses shall be made by mo-

tion to dismiss filed before the answer, if an answer is required ... (2) improper venue.... If not so made and the answer is filed, these defenses are waived").

When a court finds that a motion to dismiss or transfer for improper venue is justified, it must either dismiss the action or transfer the action to a court having proper venue. *See* Md. Rule 2–322(c)("In disposing of the motion, the court may dismiss the action or grant such lesser or different relief as may be appropriate"); Md. Rule 2–327(b)("If a court sustains a defense of improper venue but determines that in the interest of justice the action should not be dismissed, it may transfer the action to any county in which it could have been brought").

## II.

## Appellee's Arguments

### A.

### Venue Is Proper In Montgomery County

Gelb contends that proper venue is in Montgomery County. It offers several arguments to support this theory.

Gelb's declaratory judgment action was filed in response to the oral claim Lampros made for one-half of the contingency fee Gelb earned through representation of the Lewises. Claiming that Lampros would bear the burden of proof in a suit to collect the legal fee, Gelb posits, it is only "nominally the plaintiff" and Lampros is "nominally the defendant." He argues that it would be placing "form over substance" to require Gelb to file suit against Lampros in Anne Arundel County.

■ This argument is unpersuasive. Gelb cannot sidestep the critical fact that it is, in fact, the plaintiff and Lampros is, in fact, the defendant. CJ section 6–201(a)states, "a civil action shall be brought in a county where the defendant resides[.]" The Code provides no specific venue provisions for

"nominal defendants." The venue provisions of the Code are clear.

■ "The privilege of a defendant to be sued only in the county of his residence is a substantial right not to be denied except in strict compliance with the exceptions established by law." *Capron,* 250 Md. at 260, 241 A.2d 892. All doubts concerning this privilege "are to be resolved in its favor." *Allender,* 170 Md. at 166, 183 A. 610. Nominal or not, a defendant's privilege to be sued in his or her home county can only be denied in accordance with the exceptions provided in CJ sections 6–202 and 6–203. Our review of those statutes reveals no exceptions applicable to this case.

Our judicial system affords plaintiffs significant rights. Plaintiffs decide whether to file suit, whom to sue, the specific claim(s) to litigate, when to file suit, and, in most cases, where to sue. Defendants' rights are more limited. Defendants have the right not to be forced to defend in courts distant from their home or place of business. Gelb's attempt to create a new category of party, the "nominal defendant," would, if this Court so held, eviscerate the defendants' right to a court of proper venue as defined by CJ section 6–201(a).

Gelb further argues that venue is proper in Montgomery County because this contract action arose from an underlying tort action having a strong nexus to Montgomery County, and that this Court should view Lampros' position "in the context of the claim he is asserting." Illustrative of the nexus, Gelb posits, hypothetically, that Lampros would be forced to defend in Montgomery County if the Lewises filed an action there to contest the legal fees generated by the wrongful death action.

The crux of this argument is Gelb's contention that Lampros was engaged in "a regular business, [was] employed, or habitually engage[d] in a vocation" in Montgomery County when he allegedly took this Montgomery County case. These arguments fail because they are founded upon faulty application of the case law.

Gelb cites *Pacific Mortgage & Inv. Group, Ltd. v. Horn,* 100 Md.App. 311, 641 A.2d 913 (1994), for the proposition that "[i]t

is not necessary for a defendant to maintain an office or have his or her principal place of business in a certain county in order for the defendant to carry on a **regular business** in that county." *Id.* at 324, 641 A.2d 913 (citing *Dodge Park, Inc. v. Welsh,* 237 Md. 570, 572–73, 207 A.2d 503 (1965))(emphasis added). In *Pacific Mortgage,* we held that

> [a] Maryland resident that regularly provides credit to Baltimore City residents, places mortgage liens on property in Baltimore City, and buys and sells these mortgage liens has done **more than merely transacted business** in Baltimore City but has, in fact, **carried on a regular business** in Baltimore City. Venue in this case is proper in Baltimore City.

*Id.* (emphasis added).

*Dodge Park* concerned a suit filed in Montgomery County to recover damages from three lawyers whose office was in Prince George's County. *See Dodge Park,* 237 Md. at 571, 207 A.2d 503. The defendants moved to dismiss for improper venue on the grounds that they all lived in and maintained their office in Prince George's County, and that all the actions complained of took place in that county. *See id.* The Court of Appeals held that venue was proper in Montgomery County because the defendants were **habitually engaged** in the practice of law there. *See id.* at 573, 207 A.2d 503.

■ Key to the holdings in *Pacific Mortgage* and *Dodge Park* were the courts' findings that the defendants were in "regular business" and "habitually engaged" in the practice of law, respectively. The *Dodge Park* Court explained that " 'regular business or habitual avocation or employment ... include[s] the continuous pursuit of some calling or profession, such as is ordinarily engaged in as a means of livelihood or for the purpose of gain or profit.' " *Id.* at 572, 207 A.2d 503 (citation omitted). "[T]he making of a single transaction with another person in the line of a particular business [does not] constitute a carrying on of that business" as contemplated by the venue statute. *State v. Shipley,* 98 Md. 657, 661, 57 A. 12 (1904).

In furtherance of its contention that Lampros cannot maintain both that he is entitled to his fee for services rendered to the Lewises and that he did not consent to jurisdiction in Montgomery County, Gelb argues that "when an attorney undertakes to represent a client in a particular county, then for purposes of that case the attorney is engaged in a regular business in that particular county and cannot avoid venue . . . ."[1] Gelb does not contend that Lampros engaged in multiple or ongoing representation of clients in Montgomery County. Gelb's argument for venue is based strictly on Lampros' alleged involvement in the Lewis representation. A single incidence of representation in the jurisdiction by a foreign lawyer does not rise to habitual engagement. *See id.* Because Lampros was not habitually engaged in the practice of law in Montgomery County, venue is not proper there.

## B.

### Waiver Of Improper Venue Defense

Gelb argues that Lampros waived his improper venue defense when he filed a counterclaim. Resolution of this issue requires that we relate Md. Rule 2–322(a) to Rule 2–331(a), which govern mandatory preliminary motions and counterclaims, respectively.

Md. Rule 2–322 provides

**Preliminary motions.**

(a) **Mandatory.** The following defenses shall be made by motion to dismiss filed before the **answer,** if an answer is required: (1) lack of jurisdiction over the person, (2) improper venue . . . . If not so made and the answer is filed, these defenses are waived.

*Id.* (emphasis added).

The defense of improper venue is waived if it is not timely raised. *See id.* That is, the defense of lack of venue

---

1. Neither Lampros nor Roger Gelb is licensed to practice law in Maryland. Legal representation in Maryland of Maryland residents, regarding a tort that arose within Maryland, by persons not licensed to practice law in Maryland, raises issues that we will not address here.

must be filed before filing an **answer** to avoid waiver of the defense.[2] *See Pacific Mortgage & Inv. Group,* 100 Md.App. at 323, 641 A.2d 913.

Gelb asserts that Lampros waived his venue defense by filing a counterclaim. Counterclaims are governed by Rule 2–331(a), which provides

> (a) **Counterclaim against opposing party.** A party may assert as a counterclaim any claim that party has against any opposing party, whether or not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim....

Because we find no Maryland cases deciding whether counterclaims filed under Md. Rule 2–331(a) act to bar pursuit of an improper venue defense timely raised under Rule 2–322(a), we look to federal courts' interpretation of the similar federal rule for guidance:

> Maryland Rule 314 a 1 [now Rule 2–331] is modeled on federal Rule of Civil Procedure 13(b) in regard to permissive counterclaims.... The important language ... is the same, i.e., that "any claim" may be asserted "against any opposing party." We have indicated that under these circumstances, this Court will find persuasive the decisions of the Federal Courts construing the provisions of the Federal Rule from which the language of the Maryland Rule is taken.

*Edmunds v. Lupton,* 253 Md. 93, 99, 252 A.2d 71 (1969).

Federal cases from the 1950s and 1960s support Gelb's position that Lampros voluntarily submitted to the jurisdiction of the court when he filed his counterclaim, thereby waiving his right to object on the grounds of improper venue. *See, e.g., Rubens v. Ellis,* 202 F.2d 415 (5th Cir.1953)(defendant's compulsory counterclaim affirmatively sought the aid of the court, thereby waiving jurisdictional objections); *Winslow Mfg. Co. v. Peerless Gauge Co.,* 202 F.Supp. 931, 932

---

**2.** Lampros complied by filing a motion to dismiss for improper venue prior to filing an answer.

(N.D.Ohio 1958)(filing a compulsory counterclaim for declaratory judgment waived improper venue defense raised in answer); *Thompson v. United States,* 312 F.2d 516, 519 (10th Cir.1962), *cert. denied,* 373 U.S. 912, 83 S.Ct. 1303, 10 L.Ed.2d 414 (1963)(filing a motion for summary judgment and a compulsory counterclaim before raising improper venue defense waived the defense).

In a 1966 case, the United States Court of Appeals for the Seventh Circuit signaled a shift in the jurisprudence by holding that the defendant's motion to dismiss for improper venue was not waived by the filing of a counterclaim after the motion was denied. *See Knapp–Monarch Co. v. Dominion Elec. Corp.,* 365 F.2d 175, 177 (7th Cir.1966).

Over the last forty years, the federal courts have grown increasingly hostile to the theory that defendants waive jurisdictional defenses by filing responsive pleadings, cross-claims, or counterclaims.[3] Recently, the courts have consistently adopted the "better reasoned and prevailing view ... that the filing of a counterclaim, cross-claim, or third-party demand does not operate as a waiver of an objection to jurisdiction, whether that objection is raised by motion or answer, provided that the objection is not otherwise waived in the course of the litigation." *Bayou Steel Corp. v. M/V Amstelvoorn,* 809 F.2d 1147, 1149 (5th Cir.1987).

Cases holding that a defendant's filing of a counterclaim does not waive jurisdictional defenses are legion. *See Dragor Shipping Corp. v. Union Tank Car Co.,* 378 F.2d 241, 244–45 (9th Cir.1967); *Happy Mfg. Co. v. Southern Air & Hydraulics, Inc.,* 572 F.Supp. 891, 894 (N.D.Tex.1982); *Lomanco, Inc. v. Missouri Pac. R.R. Co.,* 566 F.Supp. 846, 851 (E.D.Ark. 1983); *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1330 n. 1 (9th Cir.1984), *cert. denied,* 471 U.S. 1066, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985); *Queen Noor, Inc. v. McGinn,* 578 F.Supp. 218, 220 (S.D.Tex.1984); *Cargill, Inc. v. Sabine Trading &*

---

**3.** As the jurisprudence evolved, the courts were described as being in a state of "disarray" regarding the issue. *See Cargill, Inc. v. Sabine Trading & Shipping Co.,* 756 F.2d 224, 229 (2d Cir.1985).

*Shipping Co.,* 756 F.2d 224, 225 (2d Cir.1985); *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.,* 812 F.Supp. 1139, 1149 (D.Kan.1993), *aff'd,* 17 F.3d 1302, 1994 U.S.App. LEXIS 3299 (10th Cir.1994); *Md. Nat'l Bank v. Traenkle,* 933 F.Supp. 1280, 1288 (D.Md.1996), *aff'd,* 10 Fed.Appx. 194, 2001 U.S.App. LEXIS 11521 (4th Cir.2001); *Dee–K Enter., Inc. v. Heveafil SDN. BHD.,* 985 F.Supp. 640, 643–44 (E.D.Va.1997); *Toshiba Int'l Corp. v. Fritz,* 993 F.Supp. 571, 574 (S.D.Tex. 1998); *In re Med–Atlantic Petroleum Corp.,* 233 B.R. 644, 652 (Bankr.S.D.N.Y.1999).

Although some courts distinguished between compulsory and permissive counterclaims, *see, e.g., Beard v. Braunstein,* 914 F.2d 434, 442 (3d Cir.1990)("[w]e agree that the 'better rule ... is that defendant does not waive objections to jurisdiction and venue by asserting a compulsory counterclaim") (citations omitted), the majority view now clearly "supports the proposition that jurisdictional defenses are *not* waived by the filing of a responsive pleading." *Bayou Steel,* 809 F.2d at 1149. " '[T]he trend in more recent cases is to hold that no [jurisdictional] defense is waived by the assertion of a counterclaim, **whether, permissive or compulsory.**' " *Dee–K Enter.,* 985 F.Supp. at 643 (emphasis added and citation omitted).

The Third Circuit Court of Appeals conducted an extensive analysis of whether filing a permissive counterclaim, simultaneously with raising a jurisdictional defense, waives that jurisdictional defense, in *Neifeld v. Steinberg,* 438 F.2d 423 (3d Cir.1971). Although that court recognized that "a defendant's case is even stronger for finding no waiver when a jurisdictional defense is combined with a compulsory counterclaim," *id.* at 429 n. 13,[4] it also declined to find waiver with a permissive counterclaim. It reasoned

that when the rule makers wanted to attach "waiver" consequences in certain situations, they did so explicitly.... If we found that the mere filing of a counterclaim in the same

---

4. With a compulsory claim, a party has no alternative but to submit a counterclaim because he will lose his claim if he does not. *Id.* at 429, n. 13.

responsive pleading that raised jurisdictional defenses constituted a waiver of these jurisdictional defenses, we would be adding by judicial rule another situation when jurisdictional defenses are waived.

*Id.* at 428 n. 11.

We think that the modern federal rationale holding no waiver, whether the counterclaim is permissive or compulsory, represents the better reasoning. It is unnecessary, however, to address the issue of waiver by permissive counterclaim because Lampros' counterclaim would be barred by *res judicata*, and thus be comparable to a federal compulsory counterclaim. We explain.

Under Md. Rule 2–331, all counterclaims are permissive. *See Rowland v. Harrison,* 320 Md. 223, 233, 577 A.2d 51 (1990). Fed.R.Civ.P. 13, on the other hand, permits both compulsory and permissive counterclaims.[5] The Court of Appeals addressed this incongruity between the federal and Maryland rules in *Higgins v. Barnes,* 310 Md. 532, 549, 530 A.2d 724 (1987).

While the Maryland Rules of Procedure do not speak of compulsory counterclaims, our broad definition of res judicata will, in many cases, have the same effect. This Court ... defin[ed] ... res judicata ...

[A] judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action, and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit, where the court had jurisdiction....

---

5. Fed.R.Civ.P. 13(a) governs compulsory counterclaims and provides that

[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction....

Under this definition, a plaintiff must assert all claims arising out of a particular transaction against a particular defendant or be barred from asserting them later.

*Id.* (citation omitted).

The *Higgins* Court noted that Maryland "applied the broad definition [of res judicata] to preclude a defendant from asserting counterclaims in a subsequent action that arose from a transaction involved in prior litigation." *Id.* (citing *Felger v. Nichols,* 35 Md.App. 182, 370 A.2d 141 (1977)).

The Court of Appeals addressed the effect of *res judicata* on the assertion of counterclaims in *Rowland v. Harrison,* 320 Md. at 231–32, 577 A.2d 51. The action concerned a malpractice claim brought as a counterclaim in an action to collect a debt for veterinary services. The counterclaim was voluntarily dismissed because the defendant was not prepared to pursue it. After the trial court entered judgment on the debt action, the plaintiff claimed that the doctrine of *res judicata* barred litigation of the malpractice claim. The Court turned to Section 22 of the *Restatement (Second) of Judgments.*

"(2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:

(a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or

(b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.

*Id.* at 232, 577 A.2d 51. The *Rowland* Court held that the malpractice claim was not barred because the underlying issue of negligence was not litigated in the debt action. *See id.* at 237, 577 A.2d 51.

Lampros' counterclaim involves the same facts and legal theory as Gelb's declaratory judgment action—the right to legal fees derived from representation of the Lewises in their wrongful death action. Judgment in Lampros' action,

therefore, could nullify the judgment reached in Gelb's action. Had Lampros not counterclaimed, he would have been barred from bringing his claim by *res judicata*. Applying logic and the federal cases, we consider this a compelling reason to find that he did not waive his venue defense by asserting his counterclaim.

## Conclusion

Lampros raised his defense of improper venue by preliminary motion as required by Md. Rule 2–322(a), properly supported by affidavit. It was not until after the motion to dismiss or transfer was denied that he filed his counterclaim. With his preliminary motion denied, Lampros had to choose between litigation and default. In selecting litigation, he should not be denied the opportunity to offensively promote his argument through counterclaim simply because he objected to improper venue. To find that Lampros waived his improper venue defense by filing a counterclaim would engraft an exception to Rule 2–331(a) that is not supported by the case law, and would be manifestly unfair. We decline to so hold.

**JUDGMENT VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY TO DISMISS OR TRANSFER FOR IMPROPER VENUE. COSTS TO BE PAID BY APPELLEE.**