**DEE–K ENTERPRISES, INC.,
et al., Plaintiffs,**

v.

**HEVEAFIL SDN. BHD.,
et al., Defendants.**

**No. Civ.A. 97–556–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 23, 1997.

---

Joel Davidow, Sturgis M. Sobin, Ablondi, Foster, Sobin & Davidow, P.C., Michael D. Hausfeld, Daniel A. Small, Paul T. Gallagher, Cohen, Milstein, Hausfeld & Toll, PLLC, Washington, DC, for Plaintiffs.

Walter J. Spak, Anne D. Smith, Carolyn B. Lamm, Denise L. Diáz, George L. Paul, Francis A. Vasquez Jr., White & Case, Washington, DC, for Heveafil Sdn. Bhd., Filmax Sdn. Bhd., Rubfill Sdn. Bhd., Rubberflex Sdn. Bhd., Filati Lastex Sdn. Bhd., Filati Lastes Elastofibre USA, Inc., Filati Corp. of RI, Filati Corp. of NC, Rubfil USA, Inc., and P.T. Bakrie Rubber Industry.

David M. Foster, Joseph T. Small, Christine P. Hsu, Fulbright & Jaworski, LLP, Washington, DC, for JPS Elastomerics Corp.

James A. West, James A. West, PC, Houston, TX, for Consortium International Corp.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this international antitrust action, plaintiffs allege a conspiracy between and among various foreign manufacturers of extruded rubber thread and their distributors to fix prices of the thread in the United States. The underlying facts are set out in full in an earlier Memorandum Opinion in this matter. *See Dee–K Enterps., Inc. v. Heveafil Sdn. Bhd.,* 982 F.Supp. 1138 (E.D.Va.1997).

The matter now before the Court is a motion by several defendants to dismiss for improper venue pursuant to Rule 12(b)(3), Fed.R.Civ.P. The facts pertinent to this motion may be succinctly stated. The named defendants fall into two groups: (i) Malaysian, Indonesian, and Thai *manufacturers* of extruded rubber thread, and (ii) the American *distributors* of the thread. None of these defendants is located in the Eastern District of Virginia. Moreover, no defendant transacts business in this District; defendant Consortium International Corp. ("Consortium") has supplied thread to plaintiff Dee–K Enterprises, Inc. ("Dee–K") in Virginia, but all of those transactions took place in the *Western* District of Virginia. Thus, certain defendants contend that venue is improper in this District. Several defendants also moved to dismiss this action for lack of personal jurisdiction and for failure to state a claim; these motions were denied by the earlier Memorandum Opinion. Left undecided by that Memorandum Opinion, however, was defendants' motion to dismiss for improper venue. *See Dee–K,* 982 F.Supp. at 1148–49. Accordingly, by Order dated October 23, 1997, plaintiffs were directed to file a memorandum concerning the propriety of venue in the Eastern District of Virginia. Plaintiffs have filed such a memorandum, and defendants have filed their responses. Thus, the matter is now ripe for disposition.

## I

The threshold question is whether the venue objection has been waived. Plaintiffs con-tend that each defendant either failed to raise an objection to venue in its first responsive pleading or Rule 12 motion, as required by Rule 12(h)(1), Fed.R.Civ.P., or waived its objection to venue by later asserting a counterclaim. Plaintiffs' contention is correct as to all defendants but one.

■ Plaintiffs filed their complaint on April 17, 1997. Nine defendants (the "Malaysian defendants") filed their first Rule 12 motion on June 9, 1997, and did not challenge venue in that pleading. Three of those defendants, namely Rubfil USA, Inc., Flexil Corp., and Filati Lastex Elastofibre USA, Inc., contend that they were not required to raise an improper-venue defense at that time because the defense was not "then available." *See* Rules 12(g), (h), Fed.R.Civ.P. (providing that defense is waived only for objections "then available," i.e., available at the time the first pleading was filed). These domestic defendants base their contention on the erroneous proposition that simply because the original complaint was sufficiently vague to warrant dismissal for lack of specificity,[1] it must also have been so vague as to obscure whatever basis for venue might have existed at that time. Thus, the domestic defendants argue they were not able to discern whether venue was proper in this District until plaintiffs filed their more specific, amended complaint and indicated precisely which of defendants' acts constituted the alleged conspiracy. This argument amounts to the assertion that the domestic defendants could not, on their own, have known whether or not they conducted *any* business in this District such that venue here would be proper until plaintiffs identified *specific* alleged conduct in this District that they believed violated the antitrust laws.

■ This argument is unpersuasive. First, these domestic defendants certainly knew the scope and details of their business activities, and thus they knew whether they resided, transacted business, or could be found in this District. *See* 28 U.S.C. § 1391 (setting forth criteria for proper venue). Therefore, they cannot now claim that they were unaware of a potential objection to ven-

---

**1.** By Order dated July 15, 1997, the complaint was dismissed without prejudice for failure to state a claim with the specificity and factual support required by *Estate Construction Co. v. Miller & Smith,* 14 F.3d 213, 220–21 (4th Cir. 1994).

ue at the time the original complaint was filed. Had a venue objection then been available, they could and should have raised it at that time.[2] Second, and more important, because improper venue is an affirmative defense, allegations showing that venue is proper need not be included in the complaint.[3] It follows that the Malaysian defendants have waived any objection to venue they might have had.

Yet another defendant, PT Bakrie Rubber Industry, filed its first Rule 12 motion on June 17, 1997, and did not raise a venue objection therein. Thus, it too has waived any venue objection. Three more defendants, PT Perkebunan III ("Perkebunan"), Natural Rubber Thread Co., and Longtex Rubber Industries, are in default, and thus they have waived all venue objections. *See Hoffman v. Blaski,* 363 U.S. 335, 343, 80 S.Ct. 1084, 1089, 4 L.Ed.2d 1254 (1960). In any event, venue is proper in this District as to all of these foreign defendants pursuant to 28 U.S.C. § 1391(d).[4]

■ Consortium, the last remaining defendant, by contrast did preserve its objection to venue, which it raised in response to both the first amended complaint and the second amended complaint.[5] Plaintiffs now assert, however, that because Consortium has filed a counterclaim in this action, it has waived its improper-venue defense. Plaintiffs' argument has two flaws. First, though courts in the past have split on the issue, "the trend in

more recent cases is to hold that no Rule 12(b) defense is waived by the assertion of a counterclaim, whether permissive or compulsory."[6] Charles A. Wright & Arthur R. Miller, *supra,* § 1397, at 790; *see, e.g., Chase v. Pan–Pacific Broadcasting, Inc.,* 750 F.2d 131, 132 (D.C.Cir.1984) (R.B. Ginsburg, J.);[7] *Neifeld v. Steinberg,* 438 F.2d 423, 428 n. 10 (3rd Cir.1971) ("If [defendant] had raised his jurisdictional defenses by motion prior to filing his answer,[8] there would clearly have been no waiver."). The rationale supporting these cases is persuasive: To hold otherwise would controvert the dual goals of Rule 12 of (i) preventing the delay inherent in filing successive motions and (ii) abolishing the common law practice of raising jurisdictional defenses by "special appearances." *See Gates,* 743 F.2d at 1330 n. 1.

Second, plaintiffs' argument overlooks the undeniable fact that Consortium did indeed object to venue at its first opportunity. Were plaintiffs correct that the filing of a counterclaim in effect nullifies a defendant's threshold venue objection, defendants such as Consortium would be caught in a Hobson's choice: they might either file an answer and counterclaim as required by Rules 12 and 13, Fed.R.Civ.P., and forego the venue defense; or preserve the venue defense, but then find themselves either in default for not answering or forever foreclosed from asserting a compulsory counterclaim. Clearly the Federal Rules do not compel or contemplate such

---

**2.** Moreover, "[t]he filing of an amended complaint [does] not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to amendment ." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1388, at 736 (2d ed.1990).

**3.** *See* Fed.R.Civ.P. Form 2 note 3; *Ripperger v. A.C. Allyn & Co.,* 113 F.2d 332, 334 (2d Cir. 1940); *SEC v. Ernst & Young,* 775 F.Supp. 411, 412 (D.D.C.1991); *Klepper Krop, Inc. v. Hanford,* 411 F.Supp. 276, 280 (D.Neb.1976);

**4.** Section 1391(d) provides that "[a]n alien may be sued in any district."

**5.** Consortium did not raise this defense in response to the original complaint because the motions to dismiss filed by other defendants were granted before Consortium's time in which to respond to the complaint had expired.

**6.** The parties dispute whether Consortium's counterclaim is permissive or compulsory. Disposition of the instant motion, however, does not turn on resolution of that dispute. *See, e.g., Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1330 n. 1 (9th Cir.1984) (holding that permissive counterclaim does not waive Rule 12 defense).

**7.** In *Chase,* the D.C. Circuit held that a defendant may "state in an answer both a jurisdictional defense and a counterclaim." 750 F.2d at 132. A fortiori, Consortium should be able to advance its Rule 12 defense here, when that defense was advanced *prior* to the filing of the answer and counterclaim.

**8.** Steinberg's answer, like Consortium's here, also contained a counterclaim.

a result.[9] In short, Consortium's timely venue objection is not erased by the subsequent filing of a counterclaim.

## II

■ The next task, then, is to evaluate Consortium's venue objection to determine if venue is properly laid in this District.

As to the American defendants, venue is proper in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ... or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b) (stating the venue rules for federal-question cases). In the case at bar, neither (1) nor (2) applies; thus, venue is proper as to all the American defendants in any district where one of them may be found.[10]

*Dee–K*, 982 F.Supp. at 1148–49.

Notwithstanding the earlier Memorandum Opinion's holding that venue, if proper at all, would be proper under § 1391(b)(3), plaintiffs now argue that venue is proper under § 1391(b)(1). That section requires that all defendants reside in-state, and that at least one defendant reside in the forum district. To prove that the foreign defendants reside in Virginia, plaintiffs rely on § 1391(d), which allows foreign defendants to be sued in any district. Plaintiffs suggest that because the foreign producer-defendants are subject to suit in this District by virtue of § 1391(d), those defendants also reside in this District. This they do in the face of the Court's earlier holding, reprinted here at footnote 10, that the fact that an alien can be sued in this District *does not* mean that it resides or can be found here. *See* 982 F.Supp. at 1148–49 n. 24. Plaintiffs' argument is no more persuasive the second time around.

■ As to four of the American distributor-defendants, plaintiffs do not attempt to show that they reside in Virginia. Instead, plaintiffs argue that these defendants are mere alter egos of their foreign producer-parents, and are thus subject to suit here. *See, e.g., ABC Great States, Inc. v. Globe Ticket Co.*, 304 F.Supp. 1052, 1055 (N.D.Ill. 1969) (holding that when parent and subsidiary act "as a single entity," if venue is proper as to the parent, it is also proper as to the subsidiary). Even if the evidence were to confirm that the subsidiaries had no commercial independence from the parents,[11] that would not provide a basis for concluding that the four subsidiaries reside in this District, just as there is no basis for concluding that their four foreign parents reside here. Moreover, there would still remain another domestic distributor-defendant, Consortium, who plaintiffs impliedly concede is not the alter ego of its parent, Perkebunan.[12] Ac-

---

**9.** Of course, Consortium was not required to file an answer at all at the time it did so, given that its venue objection was still pending.

**10.** "The fact that the foreign defendants can be *sued* in this district pursuant to 28 U.S.C. § 1391(d) does not mean that they can also be *found* in this district, thereby creating a basis for proper venue as to the domestic defendants pursuant to § 1391(b)(3). Were this not so, in a case involving foreign and domestic defendants, § 1391(d) could be used as to the foreign defendants to circumvent the requirements of § 1391(b) as to the domestic defendants. Neither the statute as a whole, nor sensible policy, permits such a result. When, as here, there are both foreign and domestic defendants, § 1391(b) must be satisfied as to the domestic defendants."

**11.** No determination is made here whether the subsidiaries are in fact mere alter egos of their parents. It is worth noting, however, that to the extent Virginia law would be instructive in this regard, Virginia courts apply a rather rigorous test for deciding when to disregard a corporation's separate identity. *See, e.g., Perpetual Real Estate Servs., Inc. v. Michaelson Properties, Inc.*, 974 F.2d 545, 548 (4th Cir.1992) (noting that Virginia Supreme Court has held that control over a corporation is insufficient to warrant piercing corporate veil, and that plaintiff must show that corporation is a "device or sham used to disguise wrongs" (internal quotation marks omitted)).

**12.** Plaintiffs allege in their memorandum addressing venue that four of the American defendants are alter egos of foreign producers, but they conspicuously do not make that claim with respect to Consortium. Instead, they unsuccessfully attempt to show that Consortium actually resides in this District.

cordingly, residency must be established separately as to Consortium, or plaintiffs venue choice must fail.

Plaintiffs allege (and Consortium does not dispute) that Consortium made sales to Dee–K and others in the Western District of Virginia. Yet plaintiffs place more weight on this fact than it can bear when they make the rather puzzling statement that "[b]ecause Consortium does business in the Western District of Virginia, it is ... deemed to reside there.... Venue is therefore proper in the Eastern District of Virginia...." Pl.'s Mem. at 7. Not only is this a non sequitur, it is a position directly at odds with the language of § 1391(c).[13] Pursuant to that section, Consortium would be deemed to reside in the Western District of Virginia. That fact could form the basis for proper venue pursuant to § 1391(b)(3) in the Western District, "a judicial district in which [a] defendant may be found." However, it does nothing to provide a basis for the conclusion that Consortium resides or can be found in the Eastern District.

Because they cannot establish that "all defendants reside in the same State," and furthermore, because there is no evidence that any defendant resides in the Eastern District of Virginia, plaintiffs are foreclosed from relying on § 1391(b)(1) as a basis for proper venue. In addition, the earlier Memorandum Opinion established that § 1391(b)(2) is of no avail to plaintiffs, see 1997 WL 662997, at *7, and plaintiffs have made no effort in their most recent memorandum to show that § 1391(b)(3) has been satisfied.[14] The inescapable conclusion is that venue does not properly lie in the Eastern District of Virginia.

### III

When venue is improperly laid, the district court "shall dismiss, or if it be in the interest of justice, transfer [the] case to any district or division in which it could have been brought ." 28 U.S.C. § 1406(a).[15] At the outset, it is worth noting that dismissal would be a proper remedy in this matter. When a plaintiff's attorney reasonably should have foreseen that the forum in which he filed an action was improper, dismissal is warranted. See Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1201 (4th Cir.1993) (affirming district court's ruling that a transfer would not serve the interests of justice when plaintiff's attorney "committed an obvious error in filing the plaintiff's action in the wrong court"). Lawyers, especially skilled attorneys such as plaintiffs' counsel, are expected to comply with the relatively straightforward jurisdictional and filing requirements set out in the Federal Rules of Civil Procedure. Here there was no plausible basis for believing venue was proper in this District. Although some of the alleged conspiratorial activity occurred in Floyd, Virginia, a cursory review of the configuration of the federal judicial districts would have revealed that city to be located in the Western District, not the Eastern District, of Virginia. See 28 U.S.C. § 127(b). Indeed, the only reasons one might discern for filing here are the celerity with which complex actions are disposed of in this District,[16] and the proximity of the Alexandria courthouse to plaintiffs'

---

**13.** That section provides:

In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State....

**14.** In any event, the preceding discussion demonstrates that § 1391(b)(3) cannot provide the basis for venue, for that section, too, requires that at least one defendant be found in the forum district. And no defendant is found in the Eastern District of Virginia.

**15.** Although no party has actually moved for transfer or dismissal pursuant to § 1406 (or its corollary, § 1404, which provides for transfer when venue is properly laid), defendants' and plaintiffs' memoranda cite and discuss those statutes. Transfer under § 1406 is accordingly, and properly, considered here.

**16.** See, e.g., Rock Bit Int'l, Inc. v. Smith Int'l, Inc., 957 F.Supp. 843, 844 (E.D.Tex.1997) (recognizing the speedy disposition of cases in the Eastern District of Virginia); New Eng. Mach., Inc. v. Conagra Pet Prods. Co., 827 F.Supp. 732, 734 (M.D.Fla.1993) (same).

counsel's offices in Washington, D.C. First, counsel's residence weighs little, if at all, in the venue inquiry. *See Medicenters of Amer., Inc. v. T & V Realty & Equip. Corp.,* 371 F.Supp. 1180, 1184 (E.D.Va.1974). Second, while the potential for a prompt trial is not to be disregarded entirely in the interest-of-justice calculus, *see Fannin v. Jones,* 229 F.2d 368, 369 (6th Cir.1956), it certainly does not overcome the absence of proper venue.

▮ Notwithstanding the conclusion that dismissal would be proper, a transfer is more appropriate in the circumstances. This is so given the substantial proceedings that have already occurred in this case, including, for example, initial discovery, entry of protective orders, briefing and resolution of Rule 12(b)(6) motions, and the filing of answers, counterclaims, and cross claims, and also given the accepted principle that every litigant is entitled to its day in court. Consortium suggests that, in the absence of dismissal, the case be transferred to the Western District of Virginia. The Malaysian defendants, by contrast, ask that if the action is not dismissed, it be transferred to the Western District of North Carolina. Thus, it is necessary to evaluate and balance the contacts each of those fora has with this matter.

Dee–K and other potential class members are located in the Western District of Virginia. Furthermore, Dee–K has filed a bankruptcy action in that District.[17] Other facts, however, tip the scales decisively in favor of transfer to the Western District of North Carolina. First, plaintiff Asheboro Elastics Corp. and other potential class members are located in that District. Second, of the five U.S. defendants, three are located, or have their records, in or near Charlotte, which is in the Western District of North Carolina.[18] *See Verosol B.V. v. Hunter Douglas, Inc.,* 806 F.Supp. 582, 593 (E.D.Va.1992) (transferring to district where important documentary evidence and defendant's principal place of business were located). Third, according to the Malaysian defendants' affidavits, more witnesses, and especially non-party witnesses, are located in the Western District of

North Carolina than in any other District. *See Board of Trustees, Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning,* 702 F.Supp. 1253, 1258 (E.D.Va. 1988) (finding that convenience of witnesses is an "often dispositive" factor for transfer); *Eastern Scientific Mktg., Inc. v. Tekna–Seal, Inc.,* 696 F.Supp. 173, 179 (E.D.Va.1988) (refusing to transfer because some "necessary witnesses and files [were] located within the subpoena range" of the court in which the action was filed, but outside the subpoena range of the potential transferee court). Finally, a federal grand jury has been convened in Charlotte to investigate defendants' alleged conspiratorial conduct. *See In re Anthracite Coal Antitrust Litigation,* 436 F.Supp. 402, 403 (J.P.M.L.1977) (transferring civil antitrust action to forum in which grand jury was convened because "transfer to that forum will best facilitate any necessary coordination" between the civil and criminal actions). Accordingly, the Western District of North Carolina is the appropriate transferee forum.

## IV

For the reasons stated above, venue in this District is improper. In lieu of dismissal pursuant to Rule 12(b)(3), Fed.R.Civ.P., this action will be transferred to the Western District of North Carolina, pursuant to 28 U.S.C. § 1406(a).

An appropriate Order will issue.

---

**17.** *See In re Dee–K Enterprises, Inc.,* No. 96–02935–RKR– 11 (Bankr.W.D.Va. filed Sept. 9, 1996).

**18.** The other two domestic defendants are located in Rhode Island and Texas.