# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CHENGDU GAISHI ELECTRONICS, LTD., a company incorporated under the laws of China, and ZHIZHENG WANG, an individual, for the WANG GROUP, <br><br> Appellants, <br><br> v. <br><br> G.A.E.M.S., INC., a Washington State corporation; DWG ACQUISITION COMPANY, LLC, a Washington State limited liability company; DEAN MERCIER and JANE DOE MERCIER, husband and wife and the marital community composed thereof; JOHN SMITH and JANE DOE SMITH, husband and wife and the marital community composed thereof; and DECATHLON ALPHA, III, L.P., a Delaware limited partnership, <br><br> Respondents. | DIVISION ONE <br><br> No. 79313-6-I <br><br> OPINION PUBLISHED IN PART <br><br><br><br><br><br><br><br><br><br> FILED: December 30, 2019 |

DWYER, J. — Chengdu Gaishi Electronics, Ltd. (Chengdu) and the Wang Group brought this suit, seeking repayment of a debt, against G.A.E.M.S., Inc. (GAEMS), DWG Acquisition Company LLC (DWG), Dean Mercier and John Smith, two of DWG's board members, and Decathlon Alpha III, L.P. (Decathlon), another of GAEMS's creditors. The trial court denied Chengdu's motion to appoint a receiver. It then granted DWG's motion to dismiss for insufficiency of service of process. Chengdu and the Wang Group appeal, averring that DWG

waived this affirmative defense and that the trial court erred in denying the motion for receivership. [1]

In their joint brief, respondents GAEMS, DWG, and Mercier claim that the orders from which the appeal was taken are not appealable and that the appeal should be dismissed. On the other hand, respondent Decathlon views the appeal as properly taken but urges affirmance of the trial court rulings. We view the matter as properly appealable and hold that the defenses of insufficiency of process and insufficiency of service of process were waived, thus necessitating reversal of the order of dismissal. We also hold that the trial court did not abuse its discretion in denying the motion to appoint a receiver.

I

A

In 2017, GAEMS entered into financing agreements with Chengdu, an electronics manufacturing company. That same year, DWG, GAEMS's parent company, entered into a loan agreement with the Wang Group, a consortium of several Chinese financiers led by Qiqi "Denny" Wang, with GAEMS as a guarantor. Wang, a former officer and director of GAEMS, remains a 30 percent owner of DWG.

In June 2017, GAEMS entered into another loan agreement, this time with Decathlon. Simultaneously, DWG, GAEMS, the Wang Group and Decathlon entered into a "Subordination and Intercreditor Agreement," pursuant to which the Wang Group subordinated its loan to Decathlon's and, with limited

---

[1] We refer to the appellants collectively, when discussing their arguments in this action, as "Chengdu."

2

exceptions, agreed that no payments would be made toward the Wang loan until full payment was made on the Decathlon loan. DWG, the Wang Group, and GAEMS also executed a letter agreement amending their prior loan agreement to reflect the subordination agreement's terms and confirm that the Decathlon loan would be paid off prior to the Wang Group loan.

In October 2017, the Wang Group sued GAEMS and two DWG board members seeking payment on its loan. Later, the Wang Group voluntarily dismissed the case. However, 11 months later, the Wang Group filed this lawsuit, naming Chengdu as an additional plaintiff. The defendants in this action are GAEMS, the previously-sued DWG members, Decathlon, and DWG.

In October 2018, Chengdu moved for the trial court to appoint a receiver to assume control of GAEMS and DWG. In its motion, it argued that GAEMS was insolvent and that Chengdu had a probable right to GAEMS's property. GAEMS and DWG, in response, disputed these contentions and presented evidence that GAEMS remained able to pay obligations as they came due, had future prospects, and was not an appropriate candidate for receivership. Separately, Decathlon opposed receivership on the basis that, as the senior lender, it had priority over the Wang Group to assert rights in GAEMS's property. After considering the parties' extensive briefing, but without comment or explanation, the trial court entered an order declining to appoint a receiver.

Chengdu filed a motion for reconsideration of the trial court's denial of its motion to appoint a receiver, alleging that the trial court had used the incorrect

test to determine whether GAEMS was insolvent, and requesting further explanation as to why the motion was denied.

B

Initially, Chengdu's summons and complaint had referenced DWG, in both the caption and in the body of the complaint, as "DWG Acquisition, LLP." However, the correct name of the entity was "DWG Acquisition Company LLC." After this error was called to plaintiffs' counsels' attention, Chengdu served on DWG an amended summons and complaint, both of which referenced DWG as "DWG Acquisition Company, LLC."[2] In addition, the amended complaint still contained an isolated reference to "DWG Acquisition, LLP."[3] On November 13, 2018, Chengdu filed a praecipe, or errata sheet, seeking to replace the first page of its amended complaint. It did not style this action as a motion to amend. Indeed, it did not attempt to justify this action by referencing any court rule or case authority.

That same day, DWG filed a motion to dismiss Chengdu's claims against it, based on the plaintiffs' failure to correctly identify it on the summons and complaint and the plaintiffs' failure to correct the error in the amended complaint. Then, while its motion was pending, DWG joined in GAEMS's counterclaims against Chengdu and filed a cross claim against Denny Wang, who, until that point, had not been named as a party.

---

[2] The comma preceding the letters LLC is not contained in the respondent's proper name.

[3] DWG and Chengdu do not agree as to whether an amended summons was served on DWG. While an amended summons was indeed served, it was simply titled, "Summons," with no indication that it had been amended.

Chengdu opposed the motion to dismiss and, in its pleading in opposition to the motion, indicated its willingness to move to amend its amended complaint to properly name all parties. Nevertheless, on December 3, 2018, the trial court, without explanation, granted DWG's motion to dismiss.

Meanwhile, prior to entry of the dismissal order, Chengdu filed its motion to reconsider the trial court's denial of its motion to appoint a receiver. On the same day that the trial court granted DWG's motion to dismiss, it also denied the motion for reconsideration, stating:

> THIS MATTER having come before the Court on Plantiffs' Motion for Reconsideration and/or Clarification of Court's Denial of Motion to Appoint General Receiver (the "Motion"), Motion is DENIED.*
>
> . . . .
> *This case was dismissed on December 3, 2018 for insufficiency of service of process.

Chengdu appeals.

## II

Chengdu first assigns error to the trial court's dismissal of its action on the stated basis of insufficient service of process.[4] This decision was erroneous, it asserts, because a motion based on insufficient service of process is an allegation that the trial court lacks personal jurisdiction over the defendant, and any objection by DWG to the trial court's personal jurisdiction over it was waived when it sought affirmative relief in the form of a cross claim. We agree.

---

[4] In the order of dismissal, the trial court did not set forth a basis for dismissal. The sole indication of a legal basis for dismissal is the notation on the order denying reconsideration of the denial of receivership. We thus analyze this basis for dismissal in the published portion of this opinion. We analyze the impropriety of granting dismissal on the other bases urged by the movant in the unpublished portion of this opinion.

"Proper service of the summons and complaint is a prerequisite to a court's obtaining jurisdiction over a party." Harvey v. Obermeit, 163 Wn. App. 311, 318, 261 P.3d 671 (2011). Whether service of process was proper is a question of law that this court reviews de novo. Heinzig v. Seok Hwang, 189 Wn. App. 304, 310, 354 P.3d 943 (2015). A party may waive a claim of lack of personal jurisdiction by requesting the court to grant affirmative relief. Grange Ins. Ass'n v. State, 110 Wn.2d 752, 765, 757 P.2d 933 (1988). As this court has stated:

> "[A] party, when he counterclaims, cross-claims, or impleads a third party, is seeking affirmative relief and is thereby invoking the jurisdiction of the court. He cannot at the same time deny that jurisdiction."

Kuhlman Equip. Co. v. Tammermatic, Inc., 29 Wn. App. 419, 424, 628 P.2d 851 (1981) (quoting Globig v. Greene & Gust Co., 193 F. Supp. 544, 549 (E.D. Wis. 1961)).

It matters not that the counterclaims asserted may have been of the compulsory variety. Although the assertion of compulsory counterclaims does not waive the defense of lack of personal jurisdiction, Kuhlman Equip., 29 Wn. App. at 423-24 n.4, "[u]nder CR 13(g), the assertion of a cross claim is permissive" as opposed to compulsory. Krikava v. Webber, 43 Wn. App. 217, 221, 716 P.2d 916 (1986) (citing Nautilus, Inc. v. Transamerica Title Ins. Co. of Wash., 13 Wn. App. 345, 353, 534 P.2d 1388 (1975)). By asserting its cross claim, DWG sought affirmative relief, thus invoking the jurisdiction of the court.

By invoking the jurisdiction of the court, it waived its defense of lack of personal jurisdiction over it. The trial court erred by not so ruling.[5]

III

Chengdu next asserts that the trial court erred by declining to appoint a receiver over GAEMS's affairs. This is so, Chengdu argues, because documentation before the trial court showed that the total of GAEMS's liabilities exceeded the total of GAEMS's assets. For their part, GAEMS and Decathlon dispute that this reflected the proper analysis to determine whether GAEMS was solvent.[6] Further, they correctly note that solvency is not the sole consideration before a trial court on a motion for appointment of a receiver, and the trial court's discretion to appoint or not appoint a receiver is not dependent solely on this measure. GAEMS and Decathlon have the better arguments.

A receiver is "a person appointed by the court as the court's agent, and subject to the court's direction, to take possession of, manage, or dispose of property of a person." RCW 7.60.005(10). Washington statutes identify 40 circumstances in which a receiver may be appointed; in almost every circumstance, the trial court must make the determination that appointing a receiver "is reasonably necessary and that other available remedies either are not available or are inadequate." RCW 7.60.025(1). The appropriate item in RCW 7.60.025's list of scenarios provides for such appointment

---

[5] By grounding our decision on waiver, we in no way indicate that a deficiency in the wording of either a summons or complaint gives rise to a defense of insufficiency of *service* of process, within the meaning of CR 12(b)(5). Cf. CR 12(b)(4) (insufficiency of process).

[6] As GAEMS and DWG have submitted a single respondent's brief, they are referred to collectively as "GAEMS" when their arguments on appeal are discussed.

> (i) In an action against any person who is not an individual
> . . . if that person is insolvent or is not generally paying the
> person's debts as those debts become due unless they are the
> subject of bona fide dispute, or if that person is in imminent danger
> of insolvency.

RCW 7.60.025(1)(i). This was the basis on which Chengdu sought appointment of a receiver over GAEMS.

The power to appoint a receiver is discretionary. King County Dep't of Cmty. & Human Servs. v. Nw. Defenders Ass'n, 118 Wn. App. 117, 122, 75 P.3d 583 (2003). As has long been recognized, a trial court's decision regarding appointment of a receiver is reviewed for abuse of discretion. Roberts v. Wash. Nat'l Bank, 9 Wash. 12, 13, 37 P. 26 (1894); Mony Life Ins. Co. v. Cissne Family LLC, 135 Wn. App. 948, 952, 148 P.3d 1065 (2006). "The court's discretion is not absolute or arbitrary, but a sound judicial discretion, in view of all the facts and circumstances of the particular case, 'exercised for the promotion of justice and the protection of rights, where no other adequate remedy exists.'" Union Boom Co. v. Samish River Boom Co., 33 Wash. 144, 152, 74 P. 53 (1903). "A trial court abuses its discretion when its decision 'is manifestly unreasonable or based upon untenable grounds or reasons.'" Salas v. Hi-Tech Erectors, 168 Wn.2d 664, 668-69, 230 P.3d 583 (2010) (quoting State v. Stenson, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997)); Mony Life Ins. Co., 135 Wn. App. at 952-53.

In support of its argument that the trial court abused its discretion by not appointing a receiver, Chengdu asserts that the court was required to use a "balance sheet test" to determine whether GAEMS was insolvent. In support of

8

its contentions, Chengdu points to the definition of "insolvent" in the receivership

statute:

> "Insolvent" or "insolvency" means a financial condition of a person such that the sum of the person's debts and other obligations is greater than all of that person's property, at a fair valuation, exclusive of (a) property transferred, concealed, or removed with intent to hinder, delay, or defraud any creditors of the person, and (b) any property exempt from execution under any statutes of this state.

RCW 7.60.005(5). This language tracks the federal bankruptcy statute's

definition of "insolvent" as

> with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation.

11 U.S.C.A. § 101(32)(A).

However, Washington's receivership statute does not require the rote

application of the insolvency test to determine whether appointment of a receiver

is appropriate. RCW 7.60.025(1)(i) provides for receivership where a party "is

insolvent *or* is not generally paying the person's debts as those debts become

due unless they are the subject of bona fide dispute, or if that person is in

imminent danger of insolvency." (Emphasis added.) Thus, whether a receiver

should be appointed does not hinge on insolvency alone; rather, insolvency is

one factor informing a trial court's consideration.

Furthermore, as stated above, a trial court must determine whether

appointment of a receiver "is reasonably necessary and that other available

remedies either are not available or are inadequate." RCW 7.60.025(1).

The trial court had before it ample evidence that appointing a receiver was not necessary. GAEMS's financial advisor, Debra Griffith, submitted a declaration in opposition to Chengdu's motion stating that GAEMS's *current* assets exceed its *current* liabilities by $463,802 as of September 30, 2018. Griffith also stated, with support from exhibits, that GAEMS is profitable, is current with its creditors, and "has significant prospects for growth," making it "well-positioned to rebound from past setbacks due to problematic leadership." This view was supported by the declaration of a financial partner, also citing to Griffith's exhibits, "that GAEMS is now in a very strong position to pay off its long-term debt over the next 18-36 months."

Chengdu's assertion, also supported by exhibits, that GAEMS was in fact insolvent under the balance sheet test was also presented to the trial court. However, the trial court "considered all briefs and supporting materials filed in support of or opposition to the motion" and determined that appointing a receiver was not warranted. The trial court had before it ample evidence aside from the balance sheet test that indicated receivership was not warranted, and its decision was in fact premised upon tenable reasons.[7] Even if the receivership statute requires establishing insolvency on a balance sheet test, it does not require a trial court to appoint or deny appointment of a receiver based on this measure

---

[7] In further support of the trial court's decision, Decathlon also notes that, per RCW 7.60.025(1)(i), debts subject to a bona fide dispute do not factor into a trial court's assessment of insolvency.

alone. The trial court did not abuse its discretion by declining to appoint a receiver.[8]

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

IV

A

The parties dispute whether the trial court's order of dismissal is an appealable order. Interestingly, this is not a situation in which the appellants and respondents stand at loggerheads over the issue. Rather, appellant Chengdu and respondent Decathlon agree that the trial court's order, terse and uninformative as it was, dismissed all claims as to all parties. GAEMS alone maintains that the order dismissed only the claims against DWG, rendering the order not appealable as a matter of right.

The disagreement among the parties as to the scope of the trial court order is understandable in light of its brevity and absence of specificity. Decathlon offers an elegant analysis as to why the trial court's order applies to all claims and parties: if the facts warranted dismissal as to DWG, an indispensable party to the litigation could no longer be joined, and failure to join an indispensable party required dismissal of the entire case. Decathlon's reasoning

_____

[8] Our decision resolves the issue presented. It does not foreclose a future receivership request based on facts as they then exist.

is sound. However, there is no indication in the record that the trial court adopted this point of view. But, we suppose, it might have.

GAEMS's view, to the contrary, is that because DWG was the only defendant to move for dismissal, the dismissal was, without more, operative only as to Chengdu's claims against DWG. To maintain its argument, GAEMS suggests that the court's statement on Chengdu's motion for reconsideration— "[t]his case was dismissed"—actually meant something other than that the entire case was dismissed. Again, this was in no way clearly stated by the trial court.

Nevertheless, GAEMS invokes CR 54(b) and RAP 2.2(d) to support the proposition that, absent a determination by the trial court supported by factual findings that there is no just reason to delay appeal, a dismissal order not expressly determining all of the issues before the trial court is not appealable as a matter of right. Thus, it contends that the dismissal order herein cannot be considered a final order because it did not dispose of all issues and parties in the litigation. This argument, of course, is predicated upon Chengdu's and Decathlon's views of the dismissal order being incorrect.

Similarly, GAEMS contends that RAP 2.2(a)(3) cannot apply. RAP 2.2(a)(3) provides a right of appeal from "[a]ny written decision affecting a substantial right in a civil case that in effect determines the action and prevents a final judgment or discontinues the action." GAEMS points to Chengdu's claims against the other defendants—GAEMS, Dean Mercier, John Smith, and Decathlon—as issues left unresolved by the order. In its brief, GAEMS ascribes importance to the fact that the trial court's order did not specifically address

DWG's own counterclaims (and cross claim), contending that such claims remained to be litigated *after* DWG sought and received dismissal based on an absence of personal jurisdiction over it. This is the point where the implications of GAEMS's argument become ludicrous.

If the trial court did not dismiss DWG's counterclaims and cross claim at the same time that it dismissed Chengdu's claims against DWG, the trial court erred. Numerous federal courts have held that counterclaims must be treated as conditional when asserted simultaneously with an affirmative jurisdictional defense raised in a motion to dismiss: the party asserting both can only intend to pursue the counterclaim if the motion to dismiss is denied. See, e.g., Neifeld v. Steinberg, 438 F.2d 423, 431 n.17 (3d Cir. 1971) ("[D]efendant's counterclaim can be treated as conditional, its assertion being hypothecated upon an adverse ruling on the defendant's jurisdictional defenses."); In re Med-Atlantic Petrol. Corp. v. Macoil, 233 B.R. 644, 652 (S.D.N.Y. Bankr. 1999) (counterclaim for fees and costs incurred in responding to complaint was conditional in effect, standing only for proposition that "if the plaintiffs do not prevail, then [the defendant] is entitled to be compensated for having been plunged into this litigation").

This rule allows for the assertion of jurisdictional defenses in an answer or counterclaim, limiting the instances in which such defenses may be waived. However, the rule rests on the premise that a defendant's motion to dismiss on the basis of absence of personal jurisdiction, if granted, also requires dismissal of all counterclaims that the defendant has asserted. "[T]his practice of allowing a defendant in effect to plead alternatively a counterclaim and one or more

13

threshold defenses conserves judicial resources, for if one of the defenses proves successful, the parties need not litigate a claim that the defendant presumably has no interest in asserting independently." 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: FEDERAL RULES OF CIVIL PROCEDURE § 1397, at 568 (3d ed. 2004)). In Kuhlman, we distinguished Neifeld on the basis that "affirmative relief in the form of a cross claim is not a defense or objection as contemplated by CR 12," and "[j]udicial economy is not served by permitting a defendant to pursue *permissive* claims *against third parties* while the jurisdictional issue remains unresolved." 29 Wn. App. at 424 (emphasis added). We did not, however, reject Neifeld's reasoning on the effect of a successful motion to dismiss, based on a lack of personal jurisdiction, on a defendant's counterclaim. Numerous state courts have found this reasoning to be persuasive. See, e.g., Lampros v. Gelb & Gelb, PC, 153 Md. App. 447, 459, 837 A.2d 229 (2003); Arkansas Game & Fish Comm'n v. Lindsey, 292 Ark. 314, 317, 730 S.W.2d 474 (1987); Crossman v. Contractors Rigging & Erection, 86 S.D. 448, 457, 198 N.W.2d 51 (1972); Heineken v. Heineken, 683 So.2d 194, 200 (Fla. Ct. App. 1996) (Benton, J., concurring).

GAEMS's appealability argument, however, relies on the premise that DWG could move to dismiss the claims against it based on the absence of personal jurisdiction over it and, if successful, nevertheless continue to litigate its counterclaims in the same case before the same court. This is nonsense. No party may disclaim and invoke jurisdiction simultaneously. Moreover, pursuant to the civil rules, this state of affairs would then require Chengdu to re-assert its

14

dismissed claims as they would now be compulsory counterclaims to DWG's counterclaims. Our law does not anticipate, let alone require, such an absurd situation.

If the trial court order means that which GAEMS claims it means, it is clearly erroneous. To read it otherwise is to adopt the view espoused by Chengdu and Decathlon. On the whole, on this record, we accept the arguments of Chengdu and Decathlon and deem the trial court's order of dismissal to be appealable.

B

However, were we to take DWG's assertion at face value and rule that the trial court's order is not appealable as a matter of right, we would necessarily be called upon to accept discretionary review of the order pursuant to RAP 2.3.

Our rules provide as follows, concerning grants of discretionary review:

> **Considerations Governing Acceptance of Review.** Except as provided in section (d), discretionary review may be accepted only in the following circumstances:
>
> (1) The superior court has committed an obvious error which would render further proceedings useless;
>
> (2) The superior court has committed probable error and the decision of the superior court substantially alters the status quo or substantially limits the freedom of a party to act;
>
> (3) The superior court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by an inferior court or administrative agency, as to call for review by the appellate court; or
>
> (4) The superior court has certified, or all the parties to the litigation have stipulated, that the order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that immediate review of the order may materially advance the ultimate termination of the litigation.

RAP 2.3(b).

To reach the question of whether to grant discretionary review, we would have to have adopted GAEMS's interpretation of the dismissal order. Were this the case, we would be presented with two clear, obvious trial court errors. First, the failure to recognize that the defense of insufficient service of process had been waived. And, second, the failure to dismiss GAEMS's counterclaims and cross claim simultaneously with the dismissal of the claims against it. These two errors would condemn any ultimate trial court judgment to reversal on appeal. The standards of RAP 2.3(b)(1) are, accordingly, met.

This conclusion does not, however, end our inquiry. Although the trial court identified a basis for its order of dismissal in the motion to reconsider an entirely different order, it did not identify any basis in the order of dismissal itself. This raises the possibility that the trial court could have perceived merit in any other of DWG's proposed bases for relief. Worse, it allows for the possibility that such a view might prevail on remand. Under these circumstances, we address these other proposed predicates for dismissal. As will be demonstrated, all are without merit.

DWG's motion to dismiss was brought in reliance on defenses discussed in CR 12. CR 12(b) governs the presentation of defenses to "a claim for relief" made "in any pleading." The rule lists a number of affirmative defenses that defendants must assert either (1) by motion made before the responsive pleading or (2) in the responsive pleading itself. CR 12(b). These affirmative defenses include "lack of jurisdiction over the person," CR 12(b)(2), "insufficiency of process," CR 12(b)(4), "insufficiency of service of process," CR 12(b)(5), and

16

"failure to state a claim upon which relief can be granted," CR 12(b)(6). These are the four bases cited by DWG in its motion to dismiss.

"Process" in this context is defined as a "summons or writ, esp[ecially] to appear or respond in court." BLACK'S LAW DICTIONARY 1458 (11th ed. 2019). CR 4, entitled "Process," discusses the requirements for a summons. By contrast, "pleadings" are defined in rule 7.

> **Pleadings.** There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross claim, if the answer contains a cross claim; a third party complaint, if a person who was not an original party is summoned under the provisions of rule 14; and a third party answer, if a third party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third party answer.

CR 7(a).

A summons is not a pleading. Furthermore, deficiencies in a summons are distinguished from defects in the service thereof on a party. "Under the analogous federal rule, a motion under rule 12(b)(4) is the correct procedure with which to raise an objection to the form of the process, while a motion under rule 12(b)(5) is the correct procedure with which to raise an objection to the manner or method of service." Sammamish Pointe Homeowners Ass'n v. Sammamish Pointe LLC, 116 Wn. App. 117, 120, 64 P.3d 656 (2003) (citing 5A WRIGHT & MILLER, supra, § 1353, at 276-280).

"A failure to accomplish personal service of process is not a defect that can be cured by amendment of paperwork. Errors in the form of original process are, however, generally viewed as amendable defects, so long as the defendant is not prejudiced." Sammamish Pointe, 116 Wn. App. at 124. "The modern rule

is that the proper remedy is not to dismiss the cause of action, but rather to give the parties the opportunity to amend . . . . However, the plaintiff must make some motion to amend." In re Marriage of Morrison, 26 Wn. App. 571, 574-75, 613 P.2d 557 (1980). "Where the defendant appears and answers and does not show prejudice caused by the inaccurate information, the summons can be amended and the trial court should deny a motion to dismiss." Sammamish Pointe, 116 Wn. App. at 118.

Indeed, the civil rules allow a plaintiff to move to amend a defective summons:

> **Amendment of Process.** At any time in its discretion and upon such terms as it deems just, the court may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued.

CR 4(h).

In its trial court memorandum, DWG claimed that its motion to dismiss was proper under CR 12(b)(2) (lack of jurisdiction over the person), 12(b)(4) (insufficiency of process), 12(b)(5) (insufficiency of service of process), and 12(b)(6) (failure to state a claim upon which relief can be granted). In GAEMS's appellate briefing, however, it defends the grant of DWG's motion to dismiss only as one brought for "insufficient service of process."

DWG's motion to dismiss was not based on a deficiency in the manner in which process was served. Instead, the motion identified deficiencies with the form of process, a summons that identified it both in the caption and body as "DWG Acquisition, LLP" rather than DWG Acquisition Company LLC. To the

extent that the trial court's decision was based on this error, the pertinent rule would have been CR 12(b)(4), not CR 12(b)(5).[9] On the merits (in addition to the fact that the defense was waived) there was not a basis to dismiss pursuant to CR 12(b)(5).

However, analyzing DWG's motion under the CR 12(b)(4) standard also leads to the conclusion that the motion was baseless on the merits. DWG's motion did not discuss in any detail how it was prejudiced by Chengdu's error in its identification of DWG. Nor does the motion discuss whether DWG was prejudiced by any alleged failure on the part of Chengdu to serve an amended summons.[10] In addition to a lack of demonstrable prejudice arising from the misspellings in the summons and amended complaint, there is also no basis for the proposition that Chengdu was unwilling to amend its amended complaint to address the errors.

Chengdu, to be sure, is not without fault. Rather than address the defects in its summons and amended complaint by moving to amend, Chengdu responded with a praecipe identifying the errors and asking the court—and the parties—to substitute its corrected first page of the first amended complaint for

---

[9] At oral argument, counsel for GAEMS argued that DWG's claim of insufficient service of process could be premised on an alleged failure to serve the summons at the correct address. GAEMS, however, provided no argument to support this contention in its opening brief on appeal. Rather, it addressed the issue for the first time during oral argument. "We consider those points not argued and discussed in the opening brief abandoned and not open to consideration on their merits." Fosbre v. State, 70 Wn.2d 578, 583, 424 P.2d 901 (1967) (citing State v. Davis, 60 Wn.2d 233, 373 P.2d 128 (1962); Kent v. Whitaker, 58 Wn.2d 569, 364 P.2d 556 (1961)).

[10] Instead, DWG focuses on vagaries in Chengdu's complaint and amended complaint. Because a complaint is a pleading and not process, deficiencies in a complaint do not constitute deficiencies of process. The proper remedy when a complaint is vague is a motion for a more definite statement pursuant to CR 12(e).

the original. As counsel for Chengdu acknowledged at oral argument, there is no basis in our rules of civil procedure for filing an errata in lieu of moving to amend.

However, in its memorandum in opposition to DWG's motion to dismiss, Chengdu stated:

> [I]f the Court determines it necessary to ensure that the complaint in this matter contain[s] no typographical errors regarding the names of the parties, Plaintiffs request leave to amend . . . as the Court deems appropriate.

Thus, Chengdu's strategy, flawed as it was, showed a willingness to correct its errors—further belying any contention that dismissal pursuant to CR 12(b)(4) was an appropriate remedy.

As dismissal under CR 12(b)(4) or 12(b)(5) was not warranted on the merits, we turn to the next proffered grounds for dismissal—CR 12(b)(6). CR 12(b)(6) pertains to the complaint and allows dismissal predicated upon a plaintiff's "failure to state a claim upon which relief can be granted." It is properly applied if a trial court concludes that the plaintiff is unable to prove *any* set of facts that would justify recovery. Kinney v. Cook, 159 Wn.2d 837, 842, 154 P.3d 206 (2007). In evaluating a CR 12(b)(6) motion, we presume all of the plaintiff's factual allegations to be true and draw all reasonable inferences in favor of the plaintiff from the factual allegations. Gorman v. City of Woodinville, 175 Wn.2d 68, 71, 283 P.3d 1082 (2012). We may even consider hypothetical facts not in the record to determine if dismissal is proper. Lakey v. Puget Sound Energy, Inc., 176 Wn.2d 909, 922 n.9, 296 P.3d 860 (2013). "'[I]f a plaintiff's claim remains legally insufficient even under his or her proffered hypothetical facts, dismissal pursuant to CR 12(b)(6) is appropriate.'" FutureSelect Portfolio Mgmt.,

20

Inc. v. Tremont Grp. Holdings, Inc., 180 Wn.2d 954, 963, 331 P.3d 29 (2014) (quoting Gorman v. Garlock, Inc., 155 Wn.2d 198, 215, 118 P.3d 311 (2005)). And, as the Supreme Court has stated, "there is no reason why the 'hypothetical situation should not be that which the complaining party contends actually exists.'" Halvorson v. Dahl, 89 Wn.2d 673, 674-75, 574 P.2d 1190 (1978) (internal quotation marks omitted) (quoting Brown v. MacPherson's, 86 Wn.2d 293, 298 n.2, 545 P.2d 13 (1975)). "Because the legal standard is whether *any* state of facts supporting a valid claim can be conceived, there can be no prejudice or unfairness to a defendant if a court considers specific allegations of the plaintiff to aid in the evaluation of the legal sufficiency of plaintiff's claim." Halvorson, 89 Wn.2d at 675.

DWG maintained that Chengdu's complaint was fatally insufficient for the same fundamental reasons its process was purportedly insufficient: the summons and complaint did not properly name DWG. To the extent, then, that DWG sought dismissal based on an imprecisely worded complaint, the proper remedy was not a motion to dismiss. Rather, it was a motion for a more definite statement. The civil rules provide for this.

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, or if more particularity in that pleading will further the efficient economical disposition of the action, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not obeyed within 10 days after the notice of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just.

CR 12(e).

Such a motion was never brought in this case. Any deficiencies in Chengdu's complaint that might warrant relief under CR 12(e) do not merit dismissal under CR 12(b)(6) because, in adjudicating a CR 12(b)(6) motion, the court may consider hypothetical facts not part of the record. Two hypothetical facts would be pertinent here—first, that Chengdu's amended summons and complaint was sufficient to give DWG notice of the suit against it; second, if such notice did not exist, that Chengdu would hypothetically correct the identification errors.

Within this hypothetical factual context, Chengdu's complaint states clear causes of action against DWG arising out of its soured transaction with GAEMS, DWG's subsidiary. If proved, the substance of these allegations would entitle Chengdu to relief against DWG. This is all that is necessary to allow the complaint to survive a 12(b)(6) motion.

Finally, we turn to the affirmative defense offered pursuant to CR 12(b)(2)—lack of personal jurisdiction. This defense was based on the three other asserted bases (CR 12(b)(4), CR 12(b)(5), and CR 12(b)(6)). No independent argument was raised in the trial court or in this court regarding this claim. Thus, none of the four bases offered in support of dismissal were meritorious. Hence, in addition to the first two errors identified, if the trial court relied on any of the other proffered bases for dismissal, that order, too, would be erroneous. At that point, a grant of review pursuant to RAP 2.3(b)(3) would be warranted.

We reverse the trial court's order of dismissal. We affirm its denial of Chengdu's motion to appoint a receiver.

Affirmed in part, reversed in part, and remanded for further proceedings.

WE CONCUR: